UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                            :

MARY L. HARRIS,               :

                          :

            Plaintiff,      :

                          :        20 Civ. 2011 (JPC)

         -v-               :

                          :        OPINION AND
                          :           ORDER

N.Y.C. HUMAN RESOURCES ADMINISTRATION, *et* :
*al.*,                             :

                          :

           Defendants.    :

                          :
--------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Mary L. Harris, proceeding *pro se*, is a woman in her seventies who has worked at the New York City Human Resources Administration ("HRA") for more than thirty-five years. She has sued the HRA and HRA Commissioner Steven Banks alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA"), section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), the Family and Medical Leave Act ("FMLA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Before the Court is Defendants' motion to dismiss the Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the Court grants the motion in part and denies the motion in part.

## I. Background

**A.     Facts[1]**

### 1.  HRA Employment

Harris works for the HRA as a case worker.  Addendum ¶¶ 6, 7, 9(g).  She suffers from "incurable arthritis in the knee, due to 20 plus years in the field." *Id.* ¶ 9(b).  Back in 2008, at Harris's request, the HRA assigned her to a division called the "Brooklyn CASA."[2]  *Id.*  Joyce Roberson-Steele became Harris's director at the Brooklyn CASA in May 2014.  *Id.*  At around this time, Harris held the position of Supervisor III, *id.* ¶¶ 6, 9(b), 9(c), although as discussed below, she was eventually demoted from that level following a disciplinary proceeding.  Harris asserts that she "had an unblemished record as a civil servant" before her "wrongful demotion" in June 2019.  Dkt. 52 ("Opposition") at 4.

---

[1] The Court takes the following factual allegations from the Third Amended Complaint, Dkt. 40 ("TAC"), and the Statement of Facts in Support of the Third Amended Complaint, Dkt. 41 ("Addendum").  For purposes of resolving Defendants' motion, the Court "accept[s] as true the factual allegations in the complaint and draw[s] all inferences in the plaintiff's favor."  *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015).  When deciding a Rule 12(b)(6) motion, a district court may consider, along with the factual allegations in the complaint, "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court may also "take judicial notice of the *fact*" that public filings and documents "contained certain information, without regard to the truth of their contents."  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).  The Court therefore will consider the administrative law judge's ("ALJ") recommendation decision mentioned in the Third Amended Complaint but only to determine what statements are contained in the ALJ's decision, not for the truth of those statements or otherwise for the accuracy of the ALJ's factual findings.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  Because Harris "is proceeding *pro se*, the Court also considers allegations asserted in her opposition" to the motion to dismiss "so long as they track" the Third Amended Complaint.  *Everett v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 7043 (JPC), 2022 WL 2342693, at *1 n.1 (S.D.N.Y. June 29, 2022).

[2] According to Defendants, "CASA" refers to the HRA's Home Care Services Program Medical Insurance and Community Services Administration Home Care Services Program.  *See* Dkt. 48 ("Motion") at 3 n.2.

The trouble began after Roberson-Steel took over as Harris's director.  Addendum ¶ 9(b).
At some unspecified time, Roberson-Steel accused Harris of not wearing a bra to work and began
harassing Harris for reporting "hostile behavior against [Harris] to senior executives."  *Id.* ¶ 5.  In
response, Harris filed a charge with the Equal Employment Opportunity Commission ("EEOC")
at some point in 2017.  *Id.*  Harris does not allege that she ever received a "right to sue letter" from
the EEOC in connection with this 2017 charge.  *Compare id.* ¶ 3, *with id.* ¶ 5.  At some point in
2017, Harris reported a coworker to HRA management for selling food on the job.  Opposition at
4.  Although unclear whether Harris ever reported it, Roberson-Steele also supposedly ran "a fully
stocked canteen" on HRA premises.  *Id.*

Then, beginning on September 29, 2018 and continuing until June 21, 2019, Roberson-
Steele made Harris's "work life miserable with continual write ups, hostile remarks, having
[Harris] service potentially violent clients[,] and assign[ing Harris] to supervise workers who were
quite incapable of being supervised due to physical[,] attitude[,] mental[,] neurological[,] [and]
personal issues."  Addendum ¶ 6.  Between September 2018 and January 2019, Roberson-Steele
ordered Harris to conduct field visits despite Harris's arthritic knee and the fact that other
Supervisor IIIs did not have to conduct field visits.  *Id.* ¶ 9(b).  During this time, Harris was also
written up twice for not properly supervising subordinates and insubordination.  *Id.* ¶ 9(e).
Between November 2018 and January 2019, Roberson-Steele claimed that she did not know
Harris's whereabouts at least seven times.  *Id.* ¶ 9(d).  Harris also was required to take on difficult
clients, *see id.* ¶ 6, was assigned "subordinate staff with cognitive impairments," *id.* ¶ 9(j), and had
to call the police on a supervisor who was "screaming, threatening, and pacing," *id.* ¶ 9(k).
Additionally, Roberson-Steele assigned Harris to work for two months in a hot unventilated room,
conditions that regularly induced heat exhaustion.  *Id.* ¶ 9(f).  And between May 3, 2019 and June

6, 2019, Roberson-Steele "loudly ordered" Harris to retire eight times. *Id.* ¶ 9(a). For instance, once in May 2019, Roberson-Steele asked Harris "publicly out on the floor at work," "When are you going to retire?" Opposition at 5. Roberson-Steele also "pressured" Harris to retire in the presence of someone else who was planning to retire. *Id.*; *see also id.* (explaining that Roberson-Steele "pressured" Harris to retire by "assigning [Harris] tasks that were more difficult because of [her] handicap"). In early winter 2019, a subordinate supervisor (unclear who) told Harris that "the director really does not like you, says you reported on her, [and] that you should have not be snitching on her." Addendum ¶ 4.

On July 26, 2019, Harris filed an EEOC complaint alleging that she had faced discrimination, harassment, and retaliation because of her age and disability. *Id.* ¶ 7; Dkt. 47 ("Wanslow Decl."), Exh. D ("EEOC Charge"). The EEOC issued Harris a right-to-sue letter on December 6, 2019. Addendum ¶ 3; EEOC Charge.[3]

In June 2020, Harris was then transferred (more on this below) to an HRA location in the Bronx ("the Crotona Center") and assigned a new director, Peter Uzamere. Addendum ¶¶ 12-13. At the Crotona Center, Harris's supervisor ("Ms. Green") spoke to Harris—and spoke about Harris to others—using "loud profanity." *Id.* ¶ 12. Someone (unclear who) blamed Harris for an inoperative laptop and someone (also unclear who) directed Harris to write up a subordinate that Harris had never met. *Id.* ¶¶ 12-13. Someone (again, unclear who) emailed an internal memorandum to Crotona Center staff describing the new Supervisor II as "an outstanding problem and issue" for failing to provide updated medical information. *Id.* ¶ 11. Harris, who by then had been demoted, was the only new Supervisor II at the location. *Id.* While Harris's supervisors at

---

[3] The Third Amended Complaint erroneously lists this date as December 10, 2019. *Compare* Addendum ¶ 3, *with* EEOC Charge.

first refused to retract the email, HRA Commissioner Banks eventually intervened, arranged for a retraction, and apologized for violating Harris's confidentiality.  *Id*.  Harris was also assigned by someone (unclear who) "tasks and standards" (unclear entailing what) fit for someone with a lower job title.  *Id.* ¶ 10.  That person backed off "after some back and forth."  *Id*.  And Harris alleges that she called and emailed Uzamere about her experiences at the Crotona Center, but he did not respond to her.  *Id.* ¶ 12.

### 2.  Disciplinary Proceedings

Harris was the subject of a disciplinary proceeding for allegedly filing a fraudulent medical note, insubordination, sleeping at her desk, and drinking alcohol on the job.  Opposition at 6, 10, 11; Addendum ¶ 9(c).  After presiding over a two-day trial in October 2018, Wanslow Decl., Exh. A ("ALJ R&R") at 1, the ALJ dismissed the two charges for drinking alcohol at work, *id.* at 4-6, the charge for failing to complete an assignment on time, *id.* at 7, and three of the insubordination charges, *id.* at 10-11, 13-16.   The ALJ sustained the charge against Harris for submitting a fraudulent medical note, *id.* at 2-4, the charge for sleeping at work, *id.* at 6-7, and two insubordination charges, *id.* at 8-10, 11-13.  Based on the ALJ's finding of misconduct, as well as other mitigation presented, the ALJ recommended that Harris be demoted by one level to Supervisor II.  Opposition at 11; ALJ R&R at 19.  On June 21, 2019, HRA Commissioner Banks rejected the ALJ's recommendation and demoted Harris two levels to a Supervisor I instead.  Addendum ¶¶ 2, 7; Opposition at 5; Wanslow Decl., Exh. B ("6/21/2019 Ltr.").

On July 3, 2019, Harris appealed Bank's decision to the New York Civil Service Commission ("CSC").  Addendum ¶ 7; Wanslow Decl., Exh. C ("CSC Decision") at 1.  On March

12, 2020,[4] the CSC affirmed the ALJ's factual findings but modified the penalty for Harris to a one-level demotion to Supervisor II given certain mitigating circumstances, including Harris's "past 35-year successful track record without discipline."  Addendum ¶ 7; CSC Decision at 13. Two months later, in May 2020, after the HRA delayed in changing her title to Supervisor II, Harris's lawyer moved to compel the HRA to do so.  Addendum ¶ 7.  Harris "feel[s] [that] th[e] delay in implementing the [CSC] decision was in part due to" her filing the July 2019 EEOC complaint.  *Id.*  On June 23, 2020, the HRA changed Harris's title from Supervisor I to Supervisor II.  *Id.*

## B.    Procedural History

Harris filed the original complaint on March 5, 2020.  Dkt. 2.  On April 30, 2020, she filed an amended complaint, Dkt. 7, and on July 27, 2020, she filed a second amended complaint, Dkt. 12 ("Second Amended Complaint").  In the Second Amended Complaint, she alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the ADEA, the NYSHRL, the NYCHRL, and the New York Labor Law ("NYLL").  After Defendants moved to dismiss, the Court dismissed the Second Amended Complaint without prejudice and gave Harris leave to amend her complaint once again.  *See Harris v. N.Y.C. Hum. Res. Admin.*, No. 20 Civ. 2011 (JPC), 2021 WL 3855239 (S.D.N.Y. Aug. 27, 2021).  The Court alerted Harris that any third amended complaint would "completely replace, not supplement, the Second Amended Complaint," and that "any facts or claims that Harris wishes to maintain must be included in the third amended complaint."  *Id.* at *12.

---

[4] The Third Amended Complaint mistakenly lists the decision date as February 2020. *Compare* Addendum ¶ 7, *with* CSC Decision at 1.

On October 26, 2021, Harris filed the Third Amended Complaint.  She alleges that the HRA and Banks violated the ADEA, the ADA, the Rehabilitation Act, the FMLA, the NYSHRL, and the NYCHRL.  TAC at 4.  She no longer alleges violations under Title VII or the NYLL.  *See id.* at 3-4.  She appears to request damages for "los[t] wages, legal expenses, medical expenses[,] and emotional distress."  *Id.* at 6.  Harris also seeks injunctive relief, asking the Court to direct the HRA to promote her back to the role of Supervisor III and to require the HRA and its employees to provide her a reasonable accommodation for her disability.  *Id.*

On January 24, 2022, Defendants moved to dismiss.  Dkts. 47, 48 ("Motion").  Harris submitted her opposition filings on April 22, 2022, and Defendants replied on May 16, 2022, Dkt. 31 ("Reply").

## II.  Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In making this determination, the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro*, 807 F.3d at 544, but it need not "accept as true legal conclusions couched as factual allegations," *Lafaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

The Court must construe *pro se* submissions "liberally" and interpret them "to raise the strongest arguments that they suggest."  *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d

Cir. 2020) (per curiam) (quotations omitted).  But a *pro se* complaint still "must state a plausible

claim for relief."  *Id.*  "Even in a *pro se* case . . . threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."  *Chavis v. Chappius*, 618 F.3d

162, 170 (2d Cir. 2010) (quotations omitted).

### III.   Discussion

**A.    Threshold Hurdles to Harris's Claims**

**1.   Timeliness**

"Before bringing suit in federal court under [the] ADEA[] and ADA, a private plaintiff

must file timely administrative charges with the Equal Employment Opportunity Commission

('EEOC')."  *Hogans v. Dell Mags./Penny Press*, 372 F. App'x 148, 149 (2d Cir. 2010); *see*

*McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006) (ADEA); *Harris v. City of*

*New York*, 186 F.3d 243, 247 (2d Cir. 1999) (ADA).  In "deferral states" like New York—that is,

those that have a state agency that enforces a state law prohibiting employment discrimination on

the same basis as the federal law equivalent—a claim under both statutes is time-barred if the

plaintiff does not file a charge with the EEOC (or state or local equivalent) within 300 days of the

alleged unlawful employment practice.  *Harris*, 186 F.3d at 247-48 & n.2 (ADA); *Tewksbury v.*

*Ottaway Newspapers*, 192 F.3d 322, 325, 328-29 (2d Cir. 1999) (ADA and ADEA); *see* 42 U.S.C.

§ 12117(a) (incorporating procedures from 42 U.S.C. § 2000e-5(e)(1) into ADA); 29 U.S.C.

§§ 626(d)(1)(B), 633(b) (ADEA).[5]  "Where the plaintiff complains of discrete discriminatory or

retaliatory acts such as 'termination, failure to promote, denial of transfer, or refusal to hire,' such

---

[5] The ADA also applies a 300-day time bar when a local agency enforces a local law
prohibiting disability discrimination.  *See Pizio v. HTMT Global Solutions*, 555 F. App'x 169, 8
n.6 (3d Cir. 2014); *see also Time Limits for Filing a Charge*, U.S. EEOC,
https://www.eeoc.gov/time-limits-filing-charge (last visited Aug. 2, 2022) (explaining difference
between ADA and ADEA time bar).

claims are not actionable if they occurred prior to the 300-day period even though they may be related to acts that occurred within the permissible 300-day period." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).

On July 26, 2019, Harris filed her EEOC complaint alleging discrimination and retaliation. Addendum ¶ 3.  Thus, any discrete discriminatory or retaliatory actions that occurred before September 28, 2018 are time-barred unless they fall under an exception to the 300-day limitation.[6]

To start, the continuing violation doctrine permits the Court to toll the time bar for discrimination and retaliation claims in certain circumstances.  Under this doctrine, "when a plaintiff experiences a continuous practice and policy that violates his or her rights, the commencement of the statute of limitations period may be delayed until the last violation." *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (cleaned up).  "To qualify as continuing, the claimed actions must not be discrete acts, but repeated conduct that occurs over a series of days or perhaps years." *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019) (quotations omitted); *accord Morgan*, 536 U.S. at 114-15.

Here, while much of the allegedly discriminatory or retaliatory conduct occurred after September 28, 2018, *see* Addendum ¶¶ 2, 4, 6-13, some alleged conduct occurred before that date. For example, Harris alleges that she did not receive performance evaluations in 2016 and 2017, someone shouted that she was the oldest employee at the Brooklyn CASA in May 2018, and

---

[6] As the Court previously explained, "[t]hree-hundred days before July 26, 2019 is September 29, 2018, which was a Saturday." *Harris*, 2021 WL 3855239, at *5.  Defendants take the position that conduct before September 28, 2018, the Friday before this date, is time-barred. *See* Motion at 6-7.  No conduct is alleged to have occurred on September 28, 2018, so the Court will assume, without deciding, that September 28, 2018 marks the start of the statutory period for Harris's claims of discrimination and retaliation under the ADEA and the ADA.

Roberson-Steele accused her of submitting a fraudulent medical note in November 2016.  *See id.* ¶¶ 9(a), 9(g).  Each of these pre-September 28, 2018 alleged acts was a discrete act and thus the continuing violation doctrine does not apply.  *See Zoulas*, 400 F. Supp. 3d at 50 ("Examples of discrete acts, for the purposes of the continuing violation doctrine, include disparate disciplining, negative performance reviews, termination, failure to promote, and denial of a preferred job position.").  The Court will therefore not consider any acts that occurred before September 28, 2018 as providing a basis for Harris's discrimination and retaliation claims under the ADA and the ADEA.

But the same is not true for Harris's hostile work environment claims.  "Hostile environment claims are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct."  *Morgan*, 536 U.S. at 115; *see Zoulas*, 400 F. Supp. 3d at 50 ("While discrete claims of discrimination and retaliation [under the ADEA] must be brought within the 300-day limitations period to be actionable, a different rule applies with regard to hostile work environment claims." (quoting *Spence v. Bukofzer*, No. 15 Civ. 6167 (ER), 2017 WL 1194478, at *5 (S.D.N.Y. Mar. 30, 2017))).  In *Morgan*, the Supreme Court made clear that "the incidents constituting a hostile work environment are part of one unlawful employment practice," and thus the claim is timely so long as the plaintiff timely filed with the EEOC a complaint pertaining to any act that is part of the hostile work environment claim.  536 U.S. at 118.  Because Harris's EEOC complaint was filed within the 300-day period for at least some acts that make up her hostile work environment claims, she is not barred from arguing that actions that occurred prior to September 28, 2018 contributed to those claims.  *See Zoulas*, 400 F. Supp. 3d at 51.

In sum, any alleged acts of discrimination and retaliation under the ADA and the ADEA that occurred before September 28, 2018 are untimely and the Court will not consider them as

proof of such claims except as background evidence.[7]  But Harris's allegations in support of her hostile work environment claims are timely, including alleged acts giving rise to a hostile work environment under the ADA and the ADEA that occurred prior to September 28, 2018.

## 2. Individual Liability Under the ADA, the ADEA, and the Rehabilitation Act

The Court next turns to Defendants' argument to dismiss Harris's ADA, ADEA, and Rehabilitation Act claims against Banks.  Individuals face no personal liability under the ADA, the ADEA, and the Rehabilitation Act.  *See Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (ADA); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (Rehabilitation Act); *Darcy v. Lippman*, 356 F. App'x 434, 437 (2d Cir. 2009) (ADEA); *Zoulas*, 400 F. Supp. 3d at 51 (ADEA).  The Court therefore dismisses Harris's ADA, ADEA, and Rehabilitation Act claims against Banks in his personal capacity.[8]

---

[7] Defendants do not move to dismiss the Rehabilitation Act claims as time-barred.  *See* Motion at 6-7 (only moving to dismiss the ADEA and ADA claims as time-barred).  Because "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver," Defendants have waived any claim that Harris's Rehabilitation Act claims are time-barred.  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).  But even without the waiver, the Rehabilitation Act claims are subject to different statutes of limitations than claims brought under the ADA and the ADEA.  *Smith v. New York City Dep't of Educ.*, No. 18 Civ. 8545 (PGG), 2019 WL 6307471, at *6 (S.D.N.Y. Nov. 25, 2019) (quoting *Harris*, 186 F.3d at 247).  Unlike the ADEA and the ADA, the Rehabilitation Act requires that Harris have filed her "discrimination claim in federal court within three years of the injury serving as the basis for [her] claim."  *Id.*; *accord Harris*, 186 F.3d at 247 (recognizing that a plaintiff has "300 days to file his ADA complaint with EEOC . . . [and] three years to file [a] Rehabilitation Act" claim).

In the end, however, the timeliness of the Rehabilitation Act allegations prior to September 28, 2018 is immaterial because, as discussed below, the alleged discriminatory acts before that date do not count as adverse employment actions.  Nor has Harris alleged any facts suggesting a causal connection between her disability and the alleged adverse acts.

[8] Defendants do not move to dismiss the FMLA claim against Banks on individual liability grounds.  And as detailed below, Harris fails to adequately allege a claim under the FMLA.  The Court therefore need not consider whether Banks is an "employer" under the economic reality test, which triggers individual liability under the FMLA.  *See Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016).

### 3.   Individual Liability Under the NYSHRL and the NYCHRL

Unlike the ADA, the ADEA, and the Rehabilitation Act, "the [NY]SHRL and [NY]CHRL allow for individual defendants who actually participate in discriminatory conduct to be held personally liable for that conduct." *Ullah v. NYC Dep't of Educ.*, No. 11 Civ. 3868 (GBD) (MHD), 2012 WL 4471533, at *1 (S.D.N.Y. Sept. 27, 2012); *see also Drew v. Plaza Const. Corp.*, 688 F. Supp. 2d 270, 280 (S.D.N.Y. 2010).   "Individual liability may be imposed on an 'employer' who 'actually participates in the conduct giving rise to the discrimination.'" *Deveaux v. Skechers USA*, No. 19 Civ. 9734 (DLC), 2020 WL 1812741, at *3 (S.D.N.Y. Apr. 9, 2020) (quoting *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004)).   A person qualifies as an employer under the NYSHRL if he or she "has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others." *Id.* (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012)); *see Conklin v. Cnty. of Suffolk*, 859 F. Supp. 2d 415, 437 (E.D.N.Y. 2012) (finding no individual liability under the NYSHRL when the defendant "had no supervisory role and no control over the terms of the [p]laintiff's employment").   The same inquiry applies to assessing an employer's individual liability under the NYCHRL.   *See Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 687 (S.D.N.Y. 2012) ("Since the NYCHRL and NYSHRL use virtually identical language, claims for individual liability under both statutes are subject to the same analysis.").   When a complaint does not allege that an employer participated in the discriminatory conduct, a court must dismiss NYSHRL or NYCHRL claims against that individual. *See Foster v. Consol. Edison Co. of N.Y.*, No. 21 Civ. 3570 (DLC), 2021 WL 4461163, at *1 (S.D.N.Y. Sept. 29, 2021).

Here, Banks, as HRA Commissioner, had authority to make (rather than merely carry out) personnel decisions such as demotions. *See* 6/21/2019 Ltr.   And Harris appears to allege that Banks discriminated against her by ordering her "wrongful demotion" to Supervisor I.   Opposition

at 4.  Harris's claims against Banks for individual liability meet the "actual participation" threshold because, as alleged, Banks was the person who disregarded the ALJ's recommendation for a lesser demotion in reaching his decision.  *See Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088 (RMB) (HBP), 2014 WL 1259616, at *6 (S.D.N.Y. Mar. 24, 2014) (finding individual liability available under the NYSHRL and the NYCHRL when the defendants demoted the plaintiff).  The Court further examines the legal plausibility of the NYSHRL and NYCHRL claims that relate to alleged conduct by Banks below in III.B.2.ii and III.E.2.[9]

**B.      Remaining Age-Based and Disability-Based Discrimination Claims**

    **1.  Legal Standards**

       **i.      Federal and State Law Discrimination Claims**

The ADEA, the ADA, the Rehabilitation Act, and the NYSHRL all apply similar standards at the motion to dismiss stage.  The main difference is what type of protected status the statutes cover: the ADEA covers age-based claims, the ADA and the Rehabilitation Act cover disability-based claims, and the NYSHRL covers both types of claims.

Courts evaluate employment discrimination claims under these statutes using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 76 (2d Cir. 2001) (ADEA); *Seeman v. Gracie Gardens Owners Corp.*, 794 F. Supp. 2d 476, 479 (S.D.N.Y. 2011) (ADA); *Hodges v. Holder*, 547 F. App'x 6, 8 (2d Cir. 2013) (Rehabilitation Act); *DiGirolamo v. MetLife Grp., Inc.*, 494 F. App'x 120, 122

---

[9] Harris does not make any allegations that Banks participated in the discriminatory conduct in connection with her hostile work environment claims or her failure to accommodate claims under the NYHRL or the NYCHRL.  Those claims against Banks therefore are dismissed.

(2d Cir. 2012) (NYSHRL).[10]  This framework "established that the requirements of a prima facie case for a plaintiff alleging employment discrimination change as the case progresses."  *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015).  At the motion to dismiss stage, a plaintiff "is not required to plead a *prima facie* case."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015).  Instead, the question is "whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to 'nudge[] their claims across the line from conceivable to plausible.'"  *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 570).

So to adequately plead an age-discrimination claim, a plaintiff must allege that: "(1) she was within the protected age group, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) that action took place in circumstances giving rise to an inference of discrimination."  *Holtz*, 258 F.3d at 76-77; *accord Caskey v. Cnty. of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014).  And to adequately plead a disability discrimination claim, a plaintiff "must allege: (1) that she is a qualified individual with a disability; (2) that she was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to her disability."  *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (cleaned up).

To qualify as an adverse employment action under these statutes, there must be "a materially adverse change in the terms and conditions of employment."  *Sanders v. N.Y.C. Human*

---

[10] With one caveat involving the unresolved standard for causation under the NYSHRL in this Circuit as discussed below, the NYSHRL uses the same framework as its federal counterparts. *See DiGirolamo*, 494 F. App'x at 122 ("ADEA and NYSHRL claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*."); *Berger v. New York City Police Dep't*, 304 F. Supp. 3d 360, 367 n.7 (S.D.N.Y. 2018) ("The analysis under the ADA coincides with the analysis under the NYSHRL." (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir. 2000))).

*Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (quotations omitted); *accord Caskey*, 560 F. App'x at 59. Examples of materially adverse changes include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (cleaned up).

To meet the causation requirement under the ADEA, the ADA, and the Rehabilitation Act, a plaintiff must allege facts permitting a reasonable inference that she would not have experienced the adverse employment action but for her age or disability. *See Lively v. WAFRA Inv. Advisory Grp.*, *Inc.*, 6 F.4th 293, 303 (2d Cir. 2021) ("[A]n ADEA plaintiff must plausibly allege that he would not have been terminated but for his age."); *Natofsky v. City of New York*, 921 F.3d 337, 346, 348 (2d Cir. 2019) ("conclud[ing] that the Rehabilitation Act incorporates the ADA's causation standard for employment discrimination claims" and "that the ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action"). It remains unsettled in the Second Circuit, however, whether the but-for causation standard or the lower mixed-motive standard applies to claims under the NYSHRL. *See Ragin v. Riverbay Corp.*, No. 20-2233-cv, 2021 WL 4057196, at *3 n.2 (2d Cir. Sept. 7, 2021) (declining to decide "whether 'but for' causation is the proper standard for claims of disability discrimination under the NYSHRL or whether, for instance, Title VII's lower 'mixed-motive' test would apply instead"); *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 33 (2d Cir. 2016) (explaining that the Second Circuit has assumed without deciding that "that 'but-for' causation is required to support a[n] [age discrimination] claim under the NYSHRL"). The Court need not decide the issue today. As detailed below, Harris's age-based claims survive under the

more exacting but-for test, while her disability-based claims fail even under the lower motivating factor test.

###    ii.    NYCHRL Discrimination Claims

Courts must analyze employment discrimination claims under the NYCHRL by applying "a different standard from that applicable to parallel federal and state law claims." *Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 410 (2d Cir. 2015) (per curiam).[11]   Under this less onerous standard, courts must construe the NYCHRL "liberally for the accomplishment of the uniquely broad and remedial purposes thereof." *Leroy v. Delta Airlines, Inc.*, 36 F.4th 469, 474 (2d Cir. 2022) (quotations omitted).

So to establish a claim under the NYCHRL, "the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason." *Mihalik*, 715 F.3d at 110 n.8; *accord Bohlinger v. Abbott Lab'ys Inc.*, 843 F. App'x 374, 376 (2d Cir. 2021).   The statute therefore applies a different standard for both the adverse employment action and causation requirements.   To count as being treated "less well," a plaintiff must merely plausibly allege "differential treatment that is more than trivial, insubstantial, or petty." *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 285 (S.D.N.Y. 2020) (quotations omitted).   And to meet the causation requirement, a plaintiff must merely allege that the "unlawful discrimination was one of

---

[11] It remains an open question whether "the *McDonnell Douglas* burden-shifting analysis has been modified for NYCHRL claims" after the Local Civil Rights Restoration Act of 2005. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013); *see Boatright v. U.S. Bancorp*, No. 22-4236-cv, 2022 WL 351059, at *2 (2d Cir. Feb. 7, 2022) (finding that the plaintiff's NYCHRL claims failed under both the *McDonnell Douglas* framework and a mixed-motive theory); *but see Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 72-73 (S.D.N.Y. 2016) ("Disability discrimination claims under [the ADA, the NYSHRL, and the NYCHRL] are . . . analyzed using the burden-shifting scheme set forth in *McDonnell Douglas*."); *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 529 (S.D.N.Y. 2015) ("[T]he general framework set forth in *McDonnell Douglas* still applies" to NYCHRL claims.).

the motivating factors, even if it was not the sole motivating factor, for an adverse employment decision." *Watson v. Emblem Health Servs.*, 69 N.Y.S.3d 595, 598 (App. Div. 2018); *see also, e.g.*, *Dobbs v. N.Y.U. Langone Med. Ctr.*, No. 18 Civ. 1285 (MKV), 2021 WL 1177767, at *6 (S.D.N.Y. Mar. 29, 2021) (applying motivating factor test to NYCHRL claims); *Douglas v. Banta Homes Corp.*, No. 11 Civ. 7217 (KBF), 2012 WL 4378109, at *3 (S.D.N.Y. Sept. 21, 2012) (same); *Weiss v. JPMorgan Chase & Co.*, No. 06 Civ. 4402 (DLC), 2010 WL 114248, at *1 (S.D.N.Y. Jan. 13, 2010) (same).

While the NYCHRL standards are less onerous, the plaintiff must still allege a plausible basis for relief. "The NYCHRL is not a general civility code, and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives." *Leroy*, 36 F.4th at 474 (quotations omitted).

### 2. Analysis

Harris's allegations of age and disability discrimination fall into three general buckets. Bucket One encompasses the events up to June 20, 2019, just before her two-level demotion to Supervisor I. This bucket includes allegations involving Roberson-Steele's "continual write ups, hostile remarks," calls for Harris to retire, placing Harris in a hot unventilated room, assigning Harris "potentially violent" clients and "incapable" subordinates, and assigning Harris fieldwork despite her arthritic knee. Addendum ¶¶ 6, 9(a), 9(b), 9(f). Bucket One also involves Harris's disciplinary trial in October 2018. *Id.* ¶ 9(g). Bucket Two involves Harris's two-level demotion and "simultaneous involuntary transfer" on June 24, 2019. *Id.* ¶ 2. Bucket Three involves events after Harris's transfer to the Crotona Center, where she worked under the direct supervision of Green, with Uzamere as the director. *Id.* ¶ 12. After her transfer, Green used "loud profanity" toward Harris, someone blamed Harris for an inoperative laptop, and Uzamere failed to respond to a call and email from Harris. *Id.* ¶¶ 12-13. Bucket Three also includes the email describing the

new Supervisor II, *i.e.*, Harris, as "an outstanding problem" for failing to provide updated medical information. *Id.* ¶ 11.

The Court considers two questions for all three buckets. First, did Harris adequately allege an adverse employment action under the relevant statute? Second, if so, did Harris adequately allege a causal link between that adverse employment action and her protected status (*i.e.*, her age or disability)?

### i.   Bucket One Discrimination Claims

The Court first turns to whether the alleged conduct under Bucket One gives rise to a plausible claim of age discrimination under the ADEA, the NYSHRL, and the NYCHRL, and disability discrimination under the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL. As detailed below, Harris's age-based claims based on her workload survive, but her other age-based claims and her disability-based claims fail.

*Adverse Employment Action.* To begin with, many of the alleged acts do not count as adverse employment actions under federal or state law.[12] "[N]ot every unpleasant matter short of discharge or demotion constitutes an adverse action." *Delgado v. Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 461 (S.D.N.Y. 2007). So even though "reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are

---

[12] Defendants only claim that the alleged conduct does not count as "an adverse employment action under federal law." Motion at 13. As discussed, the same test applies for Harris's NYSHRL claims. So even though Defendants make no specific argument about those NYSHRL claims, the Court will consider whether the alleged actions count as adverse employment actions for both the federal and state law claims. *See Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 170 (E.D.N.Y. 2017) (applying the same standard for adverse employment action to ADEA and NYSHRL claims). But because a different and lower test applies to the NYCHRL claims, and because Defendants have not argued that the alleged conduct failed to constitute adverse employment action under city law, the Court assumes that she has sufficiently pleaded adverse employment action under the NYCHRL.

not materially adverse alterations of employment conditions." *Castro v. N.Y.C. Bd. of Educ. Personnel*, No. 96 Civ. 6314 (MBM), 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998).  Indeed, "criticism, without any other negative results such as a decrease in pay or being placed on probation," does not qualify as an adverse employment action. *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001).  Thus, Harris's alleged "continual write ups" and "hostile remarks,"[13] Addendum ¶ 6, do not count as "materially adverse change[s]" in the terms of her employment, *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (quotations omitted).

Nor do placing Harris in a hot unventilated area; assigning her subordinates with "physical[,] attitude[,] mental[,] neurological[,] [and] personal issues"; and failing to give her performance evaluations count as adverse employment actions.  Addendum ¶¶ 6, 9(f), 9(g).  These actions hew closer to "mere inconvenience[s] or [] alteration[s] of job responsibilities" than "materially adverse change[s] in the terms and conditions of employment." *Ward v. Shaddock*, No. 14 Civ. 7660 (KMK), 2016 WL 4371752, at *5 (S.D.N.Y. Aug. 11, 2016).

But it is a closer question whether Roberson-Steele ordering Harris to conduct fieldwork to visit "potentially violent" clients, while "[t]he other [S]upervisor IIIs were not being ordered to attend the field," counts as adverse employment action.  Addendum ¶¶ 6, 9(b).  Assigning an employee a "disproportionately heavy workload" relative to other similarly situated employees can count as an adverse employment action under federal and state law. *See Feingold*, 366 F.3d at 152-53; *Ahmad v. N.Y.C. Health & Hosps. Corp.*, No. 20 Civ. 675 (PAE), 2021 WL 1225875,

---

[13] This includes the hostile remarks that happened before September 28, 2018, such as someone shouting that Harris was the oldest employee at the Brooklyn CASA in May 2018, and Roberson-Steele accusing Harris of submitting a fraudulent medical note in November 2016.  Addendum ¶¶ 9(a), 9(c).

at *27 (S.D.N.Y. Mar. 31, 2021) ("A demotion or being relegated to work normally performed by more junior employees can constitute an adverse action, as can a disproportionate increase in workload compared to those similarly situated." (cleaned up)). That said, "the receipt of undesirable assignments must be accompanied by a material detriment to an employee's working conditions to constitute an adverse employment action." *Ward*, 2016 WL 4371752, at *5. Here, Harris claims that she was "steadily working, completing immediate needs, complex cases, while [her] peer co-workers slept with their feet upon the desk [and] read fashion magazines." Addendum ¶ 9(g). She also claims that she was forced to visit an individual who "threatened to throw hot water" at her and another who "was known to be violent." *Id.* ¶ 9(b). Crediting these allegations for purposes of resolving Defendants' motion and reading them liberally, as the Court must for a *pro se* plaintiff at the motion to dismiss stage, Harris alleges that Roberson-Steele assigned her a disproportionately heavy workload involving violent clients that compromised her personal safety. Thus, Harris has plausibly alleged adverse employment action because her work responsibilities materially and detrimentally increased compared to her similarly situated coworkers.

> ***Causation for the Age-Based Claims***. Next, the Court turns to whether Harris plausibly alleges a causal link between the adverse employment action and her age. She did.

When Harris worked at the Brooklyn CASA, Roberson-Steele allegedly exerted "unrelenting pressure [on Harris] to retire because of [Harris's] age." *Id.* ¶ 1. For instance, Harris alleges that, in March 2019, Roberson-Steele "stated that [Harris] should leave/retire." *Id.* ¶ 9(k). She further alleges that, starting just two months later, from May and June 2019, Roberson-Steele "loudly ordered [Harris] to retire" on eight different occasions. *Id.* ¶ 9(a). And before the ADEA time-barred period, Harris alleges background evidence of Roberson-Steele possessing age-based

20

animus towards Harris: Harris claims she heard Roberson-Steele shout "that [Harris] was the oldest employee in CASA." *Id.* ¶ 9(a). Taken together, and once again crediting and liberally construing them, these allegations suggest that Roberson-Steele took adverse employment action against Harris because of her age. And because Harris met the but-for causation standard, she necessarily also satisfies the lower "motivating factor" requirement for the NYCHRL claims. *See Weiss*, 2010 WL 114248, at *1.

   ***Causation for the Disability-Based Claims.*** Unlike the age discrimination claims, Harris fails to plausibly allege that her disability was even a motivating factor in any adverse employment action.[14] Instead, Harris puts forward only a conclusory allegation that Roberson-Steele was aware of her condition, Opposition at 6, yet assigned "tasks that were more difficult because of [her] handicap rather than accommodating [her] disability," Addendum ¶¶ 1, 9(b). Besides these "[t]hreadbare recitals of the elements of a cause of action," *Iqbal*, 556 U.S. at 678, Harris only alleges that other Supervisor IIIs were not assigned field visits. But nothing suggests that Harris's disability played a role in that decision. At most, as discussed, the allegations suggest that it was Harris's age, not her disability, which caused Roberson-Steele to force Harris to take field visits.

* * *

   In sum, the Court dismisses all Bucket One disability discrimination claims. The Court dismisses all Bucket One age discrimination claims under federal and state law, except for Harris's

---

   [14] The Court assumes without deciding that Harris adequately alleges that she is disabled. This tracks the Court's approach in resolving Defendants' motion to dismiss Harris's Second Amended Complaint. *See Harris*, 2021 WL 3855239, at *8 ("Assuming that Harris has a disability within the meaning of the ADA . . . .").

disproportionate workload claim.  And Harris's Bucket One age discrimination claim under the NYCHRL survives dismissal in its entirety.[15]

### ii.    Bucket Two Discrimination Claims

The Court next turns to whether Harris's alleged demotion from Supervisor III to Supervisor I and "simultaneous involuntary transfer" give rise to a plausible claim of age discrimination under the ADEA, the NYSHRL, and the NYCHRL, and of disability discrimination under the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL.  Defendants concede that the demotion and transfer were adverse employment actions.  *See* Motion at 12 (only arguing causation); Reply at 5 (same).  The only question is therefore whether Harris adequately alleges a causal link between her protected status and those adverse employment actions.  She does not. Harris alleges no facts suggesting that Banks, the decisionmaker, demoted and transferred her because of her age or disability.

Harris alleges that "bogus disciplinary charges" led to a "two level demotion decision by HRA Commissioner [Banks]."  Addendum ¶ 2.  But as alleged, that demotion and transfer had nothing to do with Harris's age or disability.  To reiterate, the ALJ recommended demoting Harris one level, to Supervisor II, for allegedly submitting false medical documents, insubordination, and sleeping at work.  ALJ R&R at 19.  Banks then rejected that one-level recommended demotion, and demoted Harris two levels to Supervisor I.  Addendum ¶¶ 2, 7, 9(c); 6/21/2019 Ltr.  Harris denies each of the allegations that resulted in her demotion.  Opposition at 4-12.  While the Court assumes at this stage that Harris is correct in her denials, whether Harris was properly demoted

---

[15] Defendants also argue that Harris's claims fail because she fails to adequately allege that her coworkers are outside her protected age or disability class.  Motion at 10, 12.  Given Harris's *pro se* status, the Court rejects this argument.  It is reasonable to assume that (1) at least one coworker is under 40 years old and (2) at least one coworker does not suffer from "incurable arthritis."  Addendum ¶ 9(b).

makes no difference in the analysis here.  Even if Banks incorrectly concluded that Harris committed that alleged misconduct, Harris does not allege that Banks reached that incorrect conclusion based on any consideration of her age or disability.

In particular, there is no allegation to suggest that Banks accepted the ALJ's fact-finding and ended up demoting Harris two levels to Supervisor I with discriminatory animus.  Unlike her allegations as to Roberson-Steele, Harris does not allege a single act by Banks which reflected animus towards Harris's age or disability.  Harris does not allege that Banks ever commented on her age or disability.  Nor does Harris allege that Roberson-Steele influenced Banks's decision-making in any way.  *Cf. Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 82 (2d Cir. 2005) ("[A] defendant's discriminatory intent cannot be inferred, even at the *prima facie* stage, from circumstances unknown to the defendant.").  With no allegations suggesting that Harris's age or disability played a role in Banks's decision-making, Harris fails to allege that her age or disability was even a motivating factor in her demotion and transfer.  *See Walker v. Triborough Bridge & Tunnel Auth.*, No. 21 Civ. 474 (VEC), 2021 WL 5401483, at *4 (S.D.N.Y. Nov. 18, 2021) (granting motion to dismiss because the plaintiff's allegations "do not raise a minimal inference of discriminatory intent"); *Segal v. City Univ. of New York*, No. 18 Civ. 4444 (LB), 2019 WL 2372979, at *3 (E.D.N.Y. June 4, 2019) (granting motion to dismiss because the "plaintiff does not point to any statements or actions by CUNY employees that would give rise to a plausible inference that the defendant was motivated by discriminatory animus"); *Spinelli v. City of New York*, No. 13 Civ. 7112 (GBD) (SN), 2014 WL 4828814, at *4 (S.D.N.Y. Sept. 4, 2014) (granting motion to dismiss because the plaintiff failed to allege facts to show that the defendant was motivated by discriminatory animus).

Harris resists this conclusion by arguing that Banks did not give sufficient weight to the mitigating circumstances mentioned in the ALJ's recommendation decision.  Opposition at 12. While Harris may have had a "long record of service and a spotless disciplinary record," ALJ R&R at 19, Banks could have reasonably concluded that Harris's actions still warranted a two-level demotion.  Indeed, the one organization which Harris did not allege to have discriminated against her—the CSC—concluded that Banks' two-level demotion decision was justifiable.  The CSC explained that submitting "a fraudulent medical note is very serious misconduct[] and could justify a two-level demotion or even termination."  CSC Decision at 12.  Under these circumstances, the Court may not reasonably infer that Harris's age or disability was even a motivating factor in Banks's decision to demote and transfer her.  All Bucket Two claims are therefore dismissed.

### iii.   Bucket Three Discrimination Claims

Lastly, the Court turns to the Bucket Three claims.  Again, this Bucket covers events after Harris's transfer to the Crotona Center in June 2020.  Addendum ¶ 12.

To start with, Harris fails to allege that she suffered any adverse employment action under federal or state law.  Harris claims that Green used "loud profanity" towards her, someone sent an internal email which implied that she was a problematic employee, she was given confusing assignments, she was blamed for an inoperative laptop, and the center's director failed to respond to her phone call and email.  Addendum ¶¶ 11-13.  None of these acts created a materially adverse change in Harris's employment.  *See Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[B]eing yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments do not rise to the level of adverse employment actions because they do not have a material impact on the terms and conditions of Plaintiff's employment." (cleaned up)).

Besides failing to allege any adverse employment action for her Bucket Three federal and state claims, Harris fails to adequately allege that her protected status was at least a motivating factor in the purportedly discriminatory conduct.  This is fatal not just to her federal and state claims in Bucket Three, but to her city claims as well.  Harris never alleges that Green made any disparaging remarks against Harris's age or disability, or that Green preferred younger or able-bodied employees.  Harris fails to even allege that Green was aware of her arthritis.  Nor can Roberson-Steele's alleged discriminatory intent be imputed onto Crotona Center staff.  After Harris's transfer, Harris had a new job, in a new location, with new coworkers and supervisors.  The transfer therefore severed any causal connection to Roberson-Steele's earlier alleged discrimination.  Without a single allegation to suggest that Harris's age or disability played any role in the alleged adverse actions at the Crotona Center, Harris fails to even meet the motivating factor requirement.  The Court therefore dismisses all Bucket Three claims.

## C.  Remaining Hostile Work Environment Claims

### 1.  Legal Standards

#### i.  Federal and State Law Hostile Work Environment Claims

Much like the discrimination claims, the legal standards for a hostile work environment under the ADEA, the ADA, the Rehabilitation Act, and the NYSHRL largely overlap.  To survive a motion to dismiss under all four statutes, a plaintiff must adequately allege three elements.[16]

---

[16] The analysis of hostile work environment claims under all four statutes is the same as the analysis under Title VII.  *See Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) ("The analysis of the hostile working environment theory of discrimination is the same under the ADEA as it is under Title VII."); *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (adopting Title VII hostile work environment test for the ADA); *Knope v. Garland*, No. 20-3274-cv, 2021 WL 5183536, at *4 (2d Cir. Nov. 9, 2021) ("The elements of a hostile work environment claim are the same under the ADA, and thus, the Rehabilitation Act."); *Summa v. Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013) ("Hostile work environment claims under both Title VII and the NYSHRL are governed by the same standard.").

First, the plaintiff must allege the objective requirement: "conduct that creates an environment that a reasonable person would find hostile or abusive." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (cleaned up).  Second, the plaintiff must allege the subjective requirement: "that the plaintiff subjectively perceives [the employer's conduct] as hostile or abusive." *Id.* (cleaned up). Third, the plaintiff must allege the causal requirement: that the employer created "such an environment because of plaintiff's" protected characteristic. *Id.* (cleaned up).

A hostile work environment is objectively hostile when it "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotations omitted).  To meet this requirement, a plaintiff must show "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Fox*, 918 F.3d at 74 (quotations omitted).  In determining whether a plaintiff has met this burden, "[c]ourts look to the totality of the circumstances . . . , including proof of the 'frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the plaintiff's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23) (alterations omitted).

### ii.   NYCHRL Hostile Work Environment Claims

Compared to the federal and state statutes described above, the NYCHRL imposes a lower standard for hostile work environment claims.  Just like for the discrimination claims, courts must analyze NYCHRL hostile work environment claims "separately and independently from any federal and state law claims." *Mihalik*, 715 F.3d at 109.  To survive a motion to dismiss a hostile work environment claim, a plaintiff must allege that she was treated "less well" because of her

employer's discriminatory intent. *Id.* at 110; *accord Nguedi v. Fed. Rsrv. Bank of N.Y.*, 813 F. App'x 616, 618 (2d Cir. 2020). Under this test, courts must consider the "totality of the circumstances," thus "a single incident c[an] be actionable." *Id.* (quoting *Mihalik*, 715 F.3d at 109). That said, even though "the alleged hostile conduct need not be severe or pervasive," a plaintiff "must still allege that his age [or disability] was the motivating factor behind any workplace hostility." *Boonmalert v. City of New York*, 721 F. App'x 29, 34 (2d Cir. 2018).

### 2.   Analysis

Harris alleges two distinct hostile work environments: (1) at the Brooklyn CASA under the supervision of Roberson-Steele from 2016 to June 2020 and (2) at the Crotona Center under the supervision of Green from June 2020 onward. The Court will take each alleged hostile work environment in turn.

#### i.   Hostile Work Environment Allegations at the Brooklyn CASA

The Court begins with Harris's hostile work environment discrimination claims involving work conditions at the Brooklyn CASA. As discussed in the discrimination analysis, Harris adequately alleges that her age was a but-for cause of the actions taken against her but fails to allege that her disability was even a motivating factor in those actions. For the same reason, Harris fails to allege any basis for a disability-based hostile work environment claim under federal, state, or city law.

Defendants do not contest that Harris has met the subjective requirement in pleading her age-based hostile work environment claims. *See* Motion at 17-18; Reply at 10. The only question is thus whether Harris adequately alleges an objectively hostile work environment on account of her age. The Court concludes that she does.

Roberson-Steele allegedly "loudly ordered [Harris] to retire, sometimes within earshot of other staff" on at least eight occasions between May 3 and June 6 in 2019.  Addendum ¶ 9(a).  Someone else (unclear who) shouted that Harris was the "oldest employee in CASA."  *Id.*  Defendants downplay these allegations as merely "[p]eriodic and episodic incidents."  Motion at 19.  To be sure, "isolated, minor acts or occasional episodes do not warrant relief."  *Davis-Garett*, 921 F.3d at 41.  But eight incidents in about one month is neither isolated, occasional, or episodic.  Roberson-Steele's alleged course of conduct, if true, would have constituted an unrelenting and abusive effort to pressure Harris into retirement.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 236, 240 (2d Cir. 2007) (finding that the plaintiffs have adequately pled hostile work environment based on allegations that their employer "pressur[ed] plaintiffs to retire from employment" and made "degrading comments" such as "retire early" and "there's the door").

Besides disparaging remarks about her age, Harris also allegedly had to deal with "continual write ups, hostile remarks," and Roberson-Steele's orders for her to serve "potentially violent clients" and to supervise "incapable" subordinates, all while "peer co-workers slept with their feet upon the desk [and] read fashion magazines."  Addendum ¶¶ 6, 9(g).  Taking the allegations together—repeated and non-discrete calls for Harris to retire, along with Roberson-Steele's lopsided delegation of work responsibility to Harris's detriment—the Court may reasonably infer that these occurrences were "sufficiently severe or pervasive to alter the conditions of [Harris's] employment and create[d] an abusive working environment."  *Fox*, 918 F.3d at 74; *see Drew*, 688 F. Supp. 2d at 280 (denying motion to dismiss hostile work environment claim when the employer provided favorable treatment to white employees while being "harsh and critical, ma[king] unreasonable demands, and often rais[ing] his voice and direct[ing] profanity" toward the black plaintiff).  Because Harris has met the higher standards for her federal and state

law claims, her age-based hostile work environment claim under the NYCHRL necessarily survives as well.

### ii.    Hostile Work Environment Allegations at the Crotona Center

As for Harris's hostile work environment claims involving events after her June 2020 transfer to the Crotona Center, however, Harris's allegations do not give rise to a plausible basis for relief.  As with the discrimination claims, Harris fails to allege any facts suggesting that her age or disability was even a motivating factor in any allegedly hostile work environment at the Crotona Center.

Additionally, for the federal and state law claims, Harris fails to allege an objectively hostile work environment.  Again, Harris alleges that Green spoke with "loud profanity to [her] and about [her]," someone blamed Harris for an inoperative laptop, Uzamere never responded to her call or email, Harris was ordered to write up a subordinate whom she had never met, and someone issued an internal memo implying that Harris was "an outstanding problem" for failing to update her medical information.  Addendum ¶¶ 11-13.  Viewed holistically, these incidents are not "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."  *Fox*, 918 F.3d at 74.  Indeed, courts often dismiss hostile work environment claims based on negative or profane comments, harsh words, wrongful reprimands, and arbitrarily imposing duties outside a plaintiff's responsibilities.  *See, e.g.*, *Littlejohn*, 795 F.3d at 321 (affirming dismissal of hostile work environment claim based on allegations that the plaintiff's supervisor made negative comments about her, used harsh tones with her, wrongfully reprimanded her, replaced her at meetings, and increased her reporting schedule); *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (finding no hostile work environment when the "defendants . . . excessively criticized [the plaintiff's] work, . . . arbitrarily imposed

duties outside of her responsibilities, threw books, and sent rude emails to her"); *Ramirez v. Temin & Co., Inc.*, No. 20 Civ. 6258 (ER), 2021 WL 4392303, at *7 (S.D.N.Y. Sept. 24, 2021) (dismissing hostile work environment claim when the plaintiff alleged that her supervisor "belittled her by ordering her to perform menial tasks, yelled at her for failure to complete these tasks, and, in one instance, smacked [her] hand, as she was carrying a cup of coffee" (quotations omitted)); *Davis-Molina v. Port Auth. of N.Y. & N.J.*, No. 08 Civ. 7586 (GBD), 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (finding that "diminished [job] responsibilities," "yell[ing] at" and "talk[ing] down to," and an increased workload of menial tasks could not show that the defendant's conduct was sufficiently severe or pervasive), *aff'd*, 488 F. App'x 530 (2d Cir. 2012).

In sum, the Court dismisses all hostile work environment claims involving the Crotona Center.

## D.    Remaining Failure to Accommodate Claims

The Court turns briefly to Harris's failure to accommodate claims under the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL.  Defendants make no argument about why the Court should dismiss the failure to accommodate claims besides asking the Court to dismiss the Third Amended Complaint "in its entirety."  Motion at 3.  Generally, a party forfeits arguments not sufficiently argued in the briefs.  *See Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 206 n.6 (S.D.N.Y. 2020).  Given that Defendants are represented by counsel and are seeking dismissal of a *pro se* complaint, the Court declines to dismiss Harris's failure to accommodate claims.  *See Whitley v. Bowden*, No. 17 Civ. 3564 (KMK), 2018 WL 2170313, at *12 (S.D.N.Y. May 10, 2018) (declining to consider argument "because it is not sufficiently argued by Defendants, who are represented by counsel and attempting to dismiss a pro se Complaint" (quotations omitted)).

30

E.       **Remaining Retaliation Claims**

1.   **Legal Standards**

i.    **Federal and State Law Retaliation Claims**

Retaliation claims under the ADEA, the ADA, the Rehabilitation Act, and the NYSHRL "are analyzed under the same framework that applies to retaliation claims under Title VII."  *Smith*, 2019 WL 6307471, at *11; *see Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 362 (S.D.N.Y. 2012).  So just like with discrimination claims, "at the motion to dismiss stage, the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of . . . litigation."  *Harris*, 2021 WL 3855239, at *8 (quotations omitted).  Thus, under this framework, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) because [she] has opposed any unlawful employment practice."  *Vega*, 801 F.3d at 90 (quotations omitted).

To meet this "because" requirement, "the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."  *Id.*  To reiterate, "[b]ut-for causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."  *Id.* at 91 (cleaned up); *accord Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).  A causal connection can therefore be shown "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Littlejohn*, 795 F.3d at 319.

### ii.    NYCHRL Retaliation Claims

The NYCHRL makes it unlawful "to retaliate or discriminate in any manner against any person because such person has . . . opposed any practice forbidden under this chapter."  N.Y.C. Admin. Code § 8-107(7).  To ultimately prevail on an NYCHRL retaliation claim, "the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  *Leroy*, 36 F.4th at 474.

At the motion to dismiss stage, "a plaintiff claiming retaliation under the NYCHRL must allege that she engaged in protected activity."  *Id.*  "The plaintiff need not prove that her underlying complaint of discrimination had merit but only that it was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful."  *Id.* (quotations omitted).  And just like in the discrimination and hostile work environment contexts, the plaintiff must allege that the employer "was motivated at least in part by an impermissible motive."  *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 334 n.8 (S.D.N.Y. 2020); *see Mihalik*, 715 F.3d at 116.

### 2.    Analysis

### i.    Federal and State Retaliation Claims

Harris first alleges that Defendants retaliated against her for filing two EEOC charges by demoting and transferring her on June 24, 2019.  Addendum ¶¶ 1-3.  For both retaliation claims, Harris relies only on the temporal proximity between the protective activity (*i.e.*, the EEOC charge) and the adverse employment actions (*i.e.*, Harris's demotion and transfer).  As to the first EEOC charge, which she allegedly filed sometime in 2017, *id.* ¶ 3, there was at least a year-and-half gap

between Harris's filing of that charge and her demotion and transfer.[17]  This gap, without more, is too long to infer causation.  "Although there is no bright-line rule, district courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation."  *Harris*, 2021 WL 3855239, at *8 (cleaned up); *accord Gilford v. N.Y.S. Off. of Mental Health*, No. 17 Civ. 8033 (JPO), 2020 WL 1529359, at *4 (S.D.N.Y. Mar. 31, 2020) ("Courts in this Circuit have held that the passage of two months between protected activity and adverse action can be too long, without more, to support an inference of causation.").  Harris alleges that she filed the second EEOC charge on July 26, 2019.  Addendum ¶ 3.  Because that protective activity occurred *after* her demotion and transfer, this retaliation claim fails as well.  *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001), *as amended* (June 6, 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

Next, Harris alleges that Roberson-Steele "was vengeful" against Harris for "report[ing] her to her supervisors and beyond." Addendum ¶ 6.  Between September 29, 2018 and June 1, 2019, Roberson-Steele allegedly made Harris's "work life miserable with continual write ups, hostile remarks, having [Harris] service potentially violent clients[,] and assign[ing Harris] to supervise workers who were quite incapable of being supervised due to physical[,] attitude[,] mental[,] neurological[,] [and] personal issues."  *Id.*  It is unclear what misconduct Harris "reported" to Roberson-Steele's supervisors, and Harris does not allege that any report related to her 2017 EEOC filing.  But to the extent that Harris is claiming that Roberson-Steele retaliated

---

[17] Harris only alleges that she filed this first EEOC complaint "in 2017," Addendum ¶ 5, so this would be generously assuming that she filed the complaint at the very end of that year.

against her for filing that first EEOC complaint, the requisite causal connection cannot be reasonably inferred.  There was, at minimum, a nearly ten-month gap between Harris's 2017 EEOC charge[18] and the commencement of Roberson-Steele's purportedly discriminatory behavior toward her on September 29, 2018.  This gap, without more, also is too long to infer causation.[19]

Harris's federal and state retaliation claims relating to the HRA's delay in implementing the CSC decision also fail for lack of but-for causation.  Harris alleges that she "feel[s]" the delay in implementing her title change to Supervisor II under the CSC's March 2020 order was retaliatory for filing her second EEOC charge in June 2019.  Addendum ¶ 7.  Even assuming *arguendo* that a brief delay in correcting her job title was an adverse action, the temporal nexus between Harris's July 2019 EEOC complaint and the HRA's alleged refusal to immediately reverse the demotion in February 2020 is too tenuous to permit a reasonable inference of but-for causation.

Harris also claims that her new supervisors in June 2020 used "loud profanity to [her]" and blamed her for an inoperative laptop.  *Id.* ¶ 12.  But Harris alleges no facts to suggest that her

---

[18] Again, this is liberally assuming that Harris filed that EEOC complaint at the end of 2017.

[19] Harris alleges that in the early winter of 2019, a coworker commented to her that Roberson-Steele does not like Harris because Harris had reported on Roberson-Steele.  Addendum ¶ 4 ("alleging that a "subordinate supervisor . . . share[d] with [Harris] during early winter 2019[] that the director [*i.e.*, Roberson-Steele] really does not like [Harris], says [Harris] reported on [Roberson-Steele], that [Harris] should not be snitching on [Roberson-Steele]").  While Harris alleges when that comment was made to her by the coworker, she does not allege when Roberson-Steele made the comment to the coworker.  In the event the comment was made closer to Harris's filing of the 2017 EEOC charge and related to that charge, yet was only conveyed to Harris a significant time later, it could bolster Harris's showing of retaliatory animus on the part of Roberson-Steele.  If during discovery, information comes out that Roberson-Steele made this comment in closer proximity to Harris's 2017 EEOC filing, along with more details regarding that comment, Harris may seek leave to amend to replead a retaliation cause of action with those additional facts.  Of course, at this stage without knowing what if anything will be unearthed during discovery, it is impossible to predict the strength of any such hypothetical motion to amend.

supervisors had her June 2019 EEOC complaint in mind at the time of these communications. Without any such allegations, the interval between filing the July 2019 EEOC charge and the alleged retaliatory actions is too long to support a reasonable inference of causation.  And as discussed, these claims arising from incidents at the Crotona Center also fail because the alleged retaliatory conduct does not constitute adverse employment actions.

Many of these claims also fail because Harris does not allege that the people who purportedly retaliated against her even knew about the EEOC charges she had filed.  *See, e.g.*, *id.* ¶¶ 7, 12.  Without this knowledge, the alleged facts cannot plausibly support a finding that Harris's supervisors retaliated against her for filing either charge.  *See, e.g.*, *Kilgannon v. Soc. Sec. Admin.*, No. 20 Civ. 1891 (MKV), 2021 WL 4523505, at *9 (S.D.N.Y. Sept. 30, 2021) (dismissing retaliation claim when the plaintiff failed to allege the person who allegedly retaliated against him, "or anyone with whom he had contact, would have been aware of his EEOC complaint or any facts to suggest that no action was taken because of an earlier complaint"); *Tillman v. N.Y.C. Dep't of Hum. Res. Admin.*, No. 20 Civ. 1153 (MKV), 2021 WL 1089647, at *8 (S.D.N.Y. Mar. 22, 2021) (dismissing retaliation claim because the plaintiff "does not allege that [the employer] or any individual was aware of [the plaintiff's] EEOC charge after it was filed"); *Carmody v. City of New York*, No. 05 Civ. 8084 (HB), 2006 WL 1283125, at *3 (S.D.N.Y. May 11, 2006) (dismissing retaliation claim even though the plaintiff "was fired a couple of months after he filed the EEOC complaint" because "it is not alleged that any of the defendants knew about either complaint").  Yet even if Roberson-Steele or Banks had some general knowledge about the EEOC charges, such knowledge is "insufficient . . . if there is an 'absence of any evidence of causation.'"  *Malena*, 886 F. Supp. 2d at 362 (quoting *Britt v. Merrill Lynch & Co.*, No. 08 Civ. 5356 (GBD), 2011 WL

35

4000992, at *12 (S.D.N.Y. Aug. 26, 2011)).  Here, Harris alleges no facts which permit a reasonable inference of either knowledge or causation.

For all these reasons, Harris's federal and state retaliation claims must be dismissed.

### ii.    NYCHRL Retaliation Claim

Harris's retaliation claim under the NYCHRL fails for many of the same reasons.  Even though the NYCHRL sets a lower causation standard, Harris's allegations do not permit a reasonable inference that Roberson-Steele or Banks were "motivated at least in part by an impermissible motive," namely to retaliate against Harris for filing an EEOC complaint.  *Farmer*, 473 F. Supp. 3d at 334 n.8 (citations omitted); *see also Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 301 (S.D.N.Y. 2019) ("For claims of retaliation, the plaintiff must show a causal link between the protected activity and the retaliatory act." (quotations omitted)).  The temporal proximity between the EEOC complaints and the retaliatory conduct is too protracted, thus too attenuated, for the Court to reasonably infer causation.  *See Brown v. City of New York*, 622 F. App'x 19, 20 (2d Cir. 2015) (affirming denial of reconsideration for dismissing Title VII, NYSHRL, and NYCHRL claims because "[t]he time lapses between [] protected activities and the alleged retaliatory acts—ranging from two months to several years—were simply too attenuated to establish that the alleged adverse employment actions were the product of a retaliatory motive absent other supporting factual allegations"); *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 592 (S.D.N.Y. 2012) (dismissing Title VII, NYCHRL and NYSHRL claims for lack of causation when termination occurred six months after protected acts).  As discussed, Harris does not allege that Roberson-Steele or Banks discussed her EEOC complaints in any capacity, whether in private, in public, or within Harris's earshot.  *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 253 (E.D.N.Y. 2015) (dismissing retaliation claim brought under the NYCHRL when the plaintiff's complaint

"made no reference to any form of discrimination, either directed at [the plaintiff] or at anyone else involved in the lawsuit"). Harris does not even allege that her employers were aware of her EEOC complaints, aside from an ambiguous allegation that a coworker commented in early winter 2019 that Roberson-Steele did not like Harris because Harris had reported her. Addendum ¶ 4. Under these circumstances, Harris has failed to adequately allege a causal link between the protected activity and any adverse action, and therefore her NYCHRL retaliation claim fails as well.

**F.    FMLA Claim**

The FMLA protects employees "who need to take time away from work to deal with serious health conditions of the employee or her family." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 165-66 (2d Cir. 2017). Under the statute, eligible employees may take twelve weeks of unpaid leave per year. 29 U.S.C. § 2612(a)(1). An employee who takes qualified leave "has the right to return to the position she held before taking leave, or to an 'equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.'" *Woods*, 864 F.3d at 166 (quoting 29 U.S.C. § 2614(a)(1)(B)).

"FMLA claims come in at least two varieties: interference and retaliation." *Id.* These two claims differ depending on when the violative conduct took place. Interference claims generally involve conduct before an employee takes a leave of absence—an employer who has "prevented or otherwise impeded the employee's ability to exercise rights under the FMLA." *Id.* To state an FMLA interference claim, a plaintiff must plausibly plead: "(1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer as defined by the FMLA; (3) that she was entitled to take leave under the FMLA; (4) that she gave notice to the defendant of her intention to

take leave; and (5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016) (cleaned up).

An FMLA retaliation claim, in contrast, involves an employee "exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer." *Woods*, 864 F.3d at 166. To state an FMLA retaliation claim, a plaintiff must plausibly plead "that (1) he exercised rights protected under the FMLA, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012) (quotations omitted).

The threshold question for both claims "is whether an employee is eligible under the statute to claim its protections." *Arroyo-Horne v. City of New York*, 831 F. App'x 536, 539 (2d Cir. 2020). To be eligible for FMLA protections, an employee must have been employed for at least twelve months by the employer from whom she is requesting leave and must have worked "1250 hours in the twelve months prior to the beginning of his or her medical leave." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 715 (2d Cir. 2001); *see* 29 U.S.C. § 2611(2). While Harris did plead that she worked for the HRA for over a year, she does not allege that she worked 1,250 hours in the twelve months before requesting medical leave. She therefore fails to state an FMLA claim. *See Arroyo-Horne*, 831 F. App'x at 539 (affirming dismissal of an FMLA claim when the plaintiff failed to allege "that she had worked 1,250 hours in the 12-month period prior to her requests for FMLA leave").

Besides failing to make this threshold allegation, Harris does not allege that her personal circumstances afforded her an entitlement to leave under section 2612. *See* 29 U.S.C.

§ 2612(a)(1).  Harris could possibly seek to argue that she suffers from "a serious health condition that makes [her] unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  But the merits of such a hypothetical argument is impossible for the Court to assess because Harris provides no explanation or guidance on the nature of her FMLA claim or whether any facts would support it.[20]

The Third Amended Complaint's defects in pleading an FMLA claim do not end there. Harris never alleges that she ever notified Defendants that she intended to take leave, let alone that she did take leave.  Nor does she allege that Defendants ever denied her FMLA benefits.  And Harris fails to allege any causal link between an adverse employment action and her exercise of her rights under the FMLA.

With Harris having failed to adequately allege nearly every element under the FMLA— under either an interference or retaliation theory—the Court dismisses her FMLA claim.

## IV.  Conclusion

For all the reasons given, the Court grants the motion to dismiss in part and denies it in part.  To summarize, the following claims survive dismissal: (1) Harris's age-based discrimination claims against the HRA under the ADEA and the NYSHRL arising from a disproportionate workload, for conduct occurring from September 28, 2018 to June 20, 2019;[21] (2) Harris's age-

---

[20] Harris's FMLA claim also may be dismissed *sua sponte* because she fails to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("When a complaint fails to comply with these requirements, the district court has the power, on motion or sua sponte, to dismiss the complaint." (citations omitted)).  Indeed, Harris's FMLA claim is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.*

[21] Harris seemingly alleges that the disproportionate workload only began after September 28, 2018.  *See* Addendum ¶ 9 (explaining about "[s]ome of the adverse actions I suffered during the period September 29, 2018 to June 21, 2019" and then listing the disproportionate workload claims).  If during discovery, information comes out that her disproportionate workload began

39

based discrimination claim against the HRA under the NYCHRL, for conduct occurring up to June 20, 2019; (3) Harris's age-based hostile work environment claims against the HRA under the ADEA, the NYSHRL, and the NYCHRL involving conditions at the Brooklyn CASA; and (4) Harris's failure to accommodate claims against the HRA under the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL.

The Clerk of the Court is respectfully directed to close the motion pending at Docket Number 46 and to mail a copy of this Opinion and Order to Harris.

SO ORDERED.

Dated: August 4, 2022
       New York, New York

_____
JOHN P. CRONAN
United States District Judge

_____

before September 28, 2018, Harris may seek leave to amend to replead her age discrimination claim under the NYSHRL with those additional facts.  Of course, at this stage without knowing what if anything will be unearthed during discovery, it is impossible to predict the strength of any such hypothetical motion to amend.