UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                   :

MARY L. HARRIS,                       :

                Plaintiff,     :

                                     :

         -v-                   :        20 Civ. 2011 (JPC)

                                     :

N.Y.C. HUMAN RESOURCES ADMINISTRATION   :       OPINION AND
and STEVEN BANKS, Commissioner,        :          ORDER

                                     :

               Defendants.      :

                                     :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Mary Harris, proceeding *pro se*, brings claims generally alleging that her employer of almost forty years, the New York City Human Resources Administration ("HRA") engaged in employment discrimination.[1]  She alleges violations of the Age Discrimination in Employment

---

[1] On a preliminary note, counsel for the HRA contends that "all claims against [the HRA] must be summarily dismissed," Dkt. 93 ("Motion") at 2, as Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law," N.Y.C. Charter § 396.  "This provision 'has been construed to mean that New York City departments [and agencies], as distinct from the City itself, lack the capacity to be sued.'"  *Green v. Pryce*, No. 15 Civ. 3527 (MKB), 2015 WL 4069176, at *2 (E.D.N.Y. July 1, 2015) (alternations in original) (quoting *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 159-60 (2d Cir. 2008)).  Nevertheless, "[i]n light of [Harris]'s *pro se* status and clear intention to assert claims against the City of New York, the Court construes [the Third Amended Complaint] as asserting claims against the City of New York."  *Singleton v. N.Y.C. Police Dep't*, No. 20 Civ. 9699 (LLS), 2021 WL 665032, at *3 (S.D.N.Y. Feb. 17, 2021).  The Court thus respectfully directs the Clerk of Court to terminate the HRA as a Defendant in this action and consequently to reinstate the City of New York ("the City") as a Defendant.  The Court will also refer to the City as the Defendant throughout this Opinion and Order.  It similarly bears mention that Harris's Second Amended Complaint named the City as a Defendant, *see* Dkt. 12 at 4, although the Third Amended Complaint does not do so, and that the Honorable Vernon S. Broderick, to whom this case was previously assigned, took a similar course of action in his April 7, 2020 service order with respect to the summons and the original Complaint.  *See* Dkt. 5 at 1-2.

Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq*.; the Americans with Disabilities Act of 1990

("ADA"), 42 U.S.C. §§ 12101 *et seq*.; Section 504 of the Rehabilitation Act of 1973

("Rehabilitation Act"), 29 U.S.C. § 794; the New York State Human Rights Law ("NYSHRL"),

N.Y. Exec. Law § 296; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin.

Code §§ 8-101 *et seq*.  Pending before the Court is the City's motion for summary judgment.  For

the reasons that follow, the Court grants the motion in part and denies it in part.

## I. Background

### A.    Facts[2]

Harris was born in 1950 and has worked at the HRA since December 10, 1984.  Deft. 56.1

Stmt. ¶¶ 1-2.  Harris was appointed as a Supervisor III (Social Services) in 2004.  Pl. Counter 56.1

Stmt. ¶ 3.  Since September 2008, Harris has worked at the Brooklyn CASA—an office of the

HRA whose mission Harris described as at least partly "to provide [h]ome [c]are [s]ervices to

clients who were eligible."  Dkt. 89 ("Macioce Decl."), Exh. A ("Harris Dep. Tr.") at 34:24-25;

Deft. 56.1 Stmt. ¶ 7.[3]  Harris testified at her deposition that her duties as a Supervisor III included

---

In addition, while Harris named HRA Commissioner Steven Banks as a Defendant in her
Third Amended Complaint, Dkt. 40 ("TAC") at 1, the Court dismissed all claims against Banks in
its Opinion and Order on the City's motion to dismiss that Complaint.  *See Harris v. N.Y.C. Hum.
Res. Admin.* ("*Harris II*"), No. 20 Civ. 2011 (JPC), 2022 WL 3100663, at *19 (S.D.N.Y. Aug. 4,
2022).  The Court therefore also respectfully directs the Clerk of Court to terminate Banks as a
Defendant in this action.

[2] These facts are mainly drawn from the City's statement of undisputed material facts under
Local Civil Rule 56.1(a), Dkt. 92 ("Deft. 56.1 Stmt."), Harris's counter-statement under Rule
56.1(b), Dkt. 100 at 3-26 ("Pl. Counter 56.1 Stmt."), and the exhibits filed by the City.  Unless
otherwise noted, the Court cites only to the City's statement of undisputed material facts when
Harris does not dispute the fact, has not offered admissible evidence to refute it, or—as is
frequently the case in Harris's Rule 56.1 counter-statement—simply seeks to add her own "spin"
on the fact or otherwise dispute the inferences drawn from it.

[3] Harris states that the Brooklyn CASA used to be called CASA VI but the name was later
changed.  *See* Pl. Counter 56.1 Stmt. ¶ 7.

leading teams of Supervisor Is and Supervisor IIs to ensure that the HRA's clients had their home care and related services in place.  Harris Dep. Tr. at 33:6-14; Deft. 56.1 Stmt. ¶ 5.  As discussed extensively below, Supervisor IIIs at least occasionally had to make field visits as part of their job duties.  While Harris claims that Supervisor IIIs at the Brooklyn CASA were sent on field visits "usually [in] exceptional circumstances," Pl. Counter 56.1 Stmt. ¶ 6, the City points to what appears to be City documentation that lists "making field visits" as an example of a typical task for Supervisor IIIs (Social Services), *see* Deft. 56.1 Stmt. ¶ 6 (citing Macioce Decl., Exh. C at 3).

In any case, many—if not most—of Harris's claims are based on her apparently fraught relationship with Joyce Roberson-Steele, Harris's direct supervisor and the Director of the Brooklyn CASA during the relevant period.  *See* Deft. 56.1 Stmt. ¶¶ 11-12.  Roberson-Steele declared that she served as Director of the office from late 2013 or early 2014 until 2020 and directly supervised Harris for almost that entire period.  Dkt. 90 ("Roberson-Steele Decl.") ¶ 1.

While Harris's has many gripes about her relationship with Roberson-Steele and employment conditions at the Brooklyn CASA writ large, broadly speaking, three aspects of her work experience are most relevant to this Opinion and Order: (1) comments Roberson-Steele purportedly made about Harris retiring, (2) Roberson-Steele's work assignments for Harris, particularly as compared with those of other employees, and (3) disciplinary actions taken against Harris.  The Court will discuss these three items in turn.

### 1. Retirement-Related Comments

Harris testified that Roberson-Steele made a smattering of comments either asking about, encouraging, or ordering Harris to retire.  Harris contends that Roberson-Steele (1) asked her "why don't you retire" sometime in 2017, Harris Dep. Tr. at 106:1-4; (2) "shout[ed that Harris] was the oldest employee in CASA in approximately May 2018 . . . [and s]he was shouting, why don't I

[*i.e.*, Harris] retire?", *id.* at 106:20-22, 107:3;[4] and (3) asked Harris whether she was going to retire

at a meeting in May 2019, *id.* at 101:4-19.  Harris also alleged in the Third Amended Complaint

that Roberson-Steele "loudly ordered [her] to retire" on eight different occasions in May and June

2019, Dkt. 41 ("TAC Addendum") ¶ 9(a), and Harris confirmed during her deposition that "all of

those dates that [she gave in the Third Amended Complaint]" were accurate, Harris Dep. Tr. at

99:16-17.  Roberson-Steele, for her part, denies ever asking Harris to retire or telling Harris that

she should do so.  *See* Roberson-Steele Decl. ¶¶ 4-5.

### 2.  Work Assignments

Another focus of this Opinion and Order is Harris's objection to her workload and work

assignments at the Brooklyn CASA.  Harris claims that Roberson-Steele sent her to do three or

four field visits between September 2018 and January 2019.  *See* Deft. 56.1 Stmt. ¶ 78.  Harris

believed Roberson-Steele did so "to take advantage of her disability," Deft. 56.1 Stmt. ¶ 63, and

clarified in her Rule 56.1 counter-statement that she "was in pain for some months with an arthritis

flare up [and she] strongly believe[s the] Director ordered [her] to go to force

retirement/retaliation," Pl. Counter 56.1 Stmt. ¶ 63.[5]  Harris also contends that Roberson-Steele

did not send other Supervisor IIIs on field visits, specifically Louise Lloyd, a woman by the name

of Miss Hampton (discussed at *infra* III.B), and Alan Block.  Deft. 56.1 Stmt. ¶¶ 62, 65.  While

Harris testified that she did not know for certain whether other Supervisor IIIs were conducting

---

[4] Harris later stated in her Rule 56.1 counter-statement that she "was advised by a co-worker that [Alan] Block stated my age [of] 69 to a co-worker and why doesn't she retire," Pl. Counter 56.1 Stmt. ¶ 17, but that appears to be a response to paragraph 24 of the City's Rule 56.1 Statement.  It also appears from Harris's testimony as though, at least per Harris's recounting, Roberson-Steele first made that statement to Block and then Block repeated this statement to "somebody else," Harris Dep. Tr. at 103:23-104:3, which is in line with the City's recounting of that incident, *see* Deft. 56.1 Stmt. ¶ 24.

[5] Harris styled this statement as paragraph 53, but the context clearly indicates that this was a typo.

field visits, *see* Harris Dep. Tr. at 53:3-4, her fundamental objections seem to be that Roberson-Steele made her conduct field visits for these three co-worker's cases, *see id.* at 53:7-9, and that some of these visits involved potentially dangerous clients, *see infra* III.B.  Roberson-Steele denied both sending Harris on "three or four" field visits from September 2018 to January 2019, Roberson-Steele Decl. ¶ 12, and "order[ing] Harris to perform field visits on cases that were not assigned to her team," *id.* ¶ 17.  She also stated that "[a]ll Supervisor IIIs under my direction had to, on occasion, go to the field," *id.* ¶ 14, including Block and Lloyd, *id.* ¶¶ 15-16.  Harris's other main, workload-related objection is that Roberson-Steele allegedly "ordered [Harris] to perform duties, such as inventory and attending events, which are normally handled by an office manager," between September 2018 and January 2019, and perhaps before September 2018 as well.  Deft. 56.1 Stmt. ¶¶ 96-97.  Other, more minor incidents are briefly touched on further below.  *See infra* III.C.

### 3.  Disciplinary Actions

Harris also has an extensive disciplinary history at the Brooklyn CASA, having been the subject of disciplinary memoranda (referred to as "write-ups") approximately a dozen times between 2017 and 2019.  *See* Deft. 56.1 Stmt. ¶¶ 27-61.  Indeed, the HRA instituted a disciplinary proceeding against Harris—seemingly in November 2017, per Harris, *see* Harris Dep. Tr. at 74:25-75:1—pursuant to Section 75 of the New York Civil Service Law (the "Section 75 Proceedings") for "(1) [s]ubmission of a fraudulent medical document, (2) drinking alcohol at work, (3) sleeping at work, and (4) insubordination on May 1, May 24, June 28, June 29, July 13, and July 17, 2017."  Deft. 56.1 Stmt. ¶ 52; *see generally* Macioce Decl., Exh. O ("ALJ Report & Recommendation").  A municipal Administrative Law Judge ("ALJ") presided over a two-day evidentiary hearing in October 2018 concerning these charges and ultimately concluded that Harris "(1) submitted a fraudulent medical document, (2) was insubordinate by missing deadlines on May 2 and 3, 2017,

(3) slept at work on June 2, 2019, and (4) disobeyed a supervisor's direct order by attending a training program and refusing to return to her office on June 29, 2017." Deft. 56.1 Stmt. ¶ 53. Notably, while the HRA sought termination of Harris's employment, the ALJ recommended in a Report and Recommendation that Harris be demoted from Supervisor III to Supervisor II. ALJ Report & Recommendation at 18-19. Harris's demotion took somewhat of a circuitous path in the following years: in June 2019, the HRA declined to adopt the ALJ's proposed penalty and instead demoted Harris two levels to Supervisor I, *see* Dkt. 47-2 at 1, only for Harris to successfully appeal this decision to the New York City Civil Service Commission, which restored the demotion to only being for one level, *see* Dkt. 47-3 at 13. Harris remained a Supervisor II at the time of her deposition in February 2023. *See* Harris Dep. Tr. at 28:1-3.

## B.   Procedural History

Harris filed this action on March 5, 2020, Dkt. 2, after receiving a right-to-sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC") on December 6, 2019 for an EEOC charge that she filed on July 26, 2019, Dkt. 95-1 ("EEOC Charge") at 2, 10. Harris then proceeded to amend her complaint twice: first on April 30, 2020, Dkt. 7, then again on July 27, 2020, Dkt. 12. On August 27, 2021, the Court granted the defendants' motion to dismiss the Second Amended Complaint but granted Harris leave to file a third amended complaint. *See Harris v. NYC Hum. Res. Admin.*, No. 20 Civ. 2011 (JPC), 2021 WL 3855239 (S.D.N.Y. Aug. 27, 2021). Harris then filed the operative Third Amended Complaint on October 26, 2021. Dkts. 40-41. On August 4, 2022, the Court granted the HRA and Banks's motion to dismiss the Third Amended Complaint in part and denied it in part. *See Harris II*, 2022 WL 3100663. Having conducted discovery, the City filed the instant motion for summary judgment on July 5, 2023. Dkts. 88-95. Harris filed her opposition on October 23, 2023, Dkt. 100, and the City filed its reply

6

on December 6, 2023, Dkt. 106 ("Reply").  In light of some of the procedural deficiencies in Harris's opposition—discussed *infra* II—the City also filed a motion to strike on December 6, 2023.  Dkt. 103-104, 105 ("Motion to Strike").  Harris replied to this motion on February 16, 2024. Dkt. 112 ("Opposition to Motion to Strike").  The City filed its reply on February 29, 2024.  Dkt. 115 ("Reply to Motion to Strike").

## II.  Legal Standard

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'"  *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 620 (2d Cir. 2016) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  "A genuine dispute exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' while a fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 Civ. 5735 (GHW), 2019 WL 1244291, at *4 (S.D.N.Y. Mar. 18, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In conducting this review, the Court "resolve[s] all ambiguities and draw[s] all reasonable inferences in favor of the nonmoving party." *Mhany Mgmt.*, 819 F.3d at 620.

"The movant bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,' and, if satisfied, the burden then shifts to the non-movant to present 'evidence sufficient to satisfy every element of the claim.'"  *Chen*, 2019 WL 1244291, at *4 (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)).  The non-movant "may not rely on conclusory allegations or unsubstantiated speculation," and "must offer some hard evidence

showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks omitted).  The non-movant must present more than a "scintilla of evidence." *Anderson*, 477 U.S. at 252.  "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks omitted).

As noted above, Harris proceeds *pro se*.  The Court must construe *pro se* submissions "liberally" and interpret them "to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (per curiam) (internal quotation marks omitted).  "When a *pro se* litigant is involved, the same standards for summary judgment apply, but the *pro se* litigant should be given special latitude in responding to a summary judgment motion." *Roundtree v. New York City*, No. 15 Civ. 8198 (JPC), 2021 WL 4504471, at *4 (S.D.N.Y. Sept. 30, 2021) (internal quotation marks omitted).  This principle, however, has limits and "does not relieve plaintiff of [her] duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted).  "A *pro se* party's bald assertions unsupported by evidence are thus insufficient to overcome a motion for summary judgment." *Roundtree*, 2021 WL 4504471, at *4 (internal quotation marks omitted).

On that note, the City is correct to point out that Harris's response to its summary judgment motion is nothing short of a "procedural 'comedy of errors.'" *Amoco Overseas Oil Co. v. Compagnie Nationale Algérienne de Navigation*, 605 F.2d 648, 650 (2d Cir. 1979); *see* Reply at 2-5.  Harris's submissions blithely disregard the Federal Rules of Civil Procedure and this Court's

local rules, all of this despite the fact that the City provided Harris with the requisite Local Rule 56.2 notice and the text of Federal Rule of Civil Procedure 56 and Local Rule 56.1. *See* Dkt. 94.

First, Harris's one-page-long, all-caps opposition brief engaged in no meaningful way with the City's arguments, despite Rule 56(c) generally requiring a party to base arguments on materials in the record. *See* Dkt. 100 at 2. Harris's rote incantations of her causes of action and her "susp[icion] . . . that [she] ha[s] been blacklisted, gaslighted, whatever[] the term is nowadays" simply do not pass muster in the absence of further factual details. *Id.* And, as noted by the City, her objection to not having received "whistle blower protection," *id.*—seemingly for having "reported illegal sales of food," Pl. Counter 56.1 ¶ 26—is unavailing after the Court's dismissal of her retaliation claims in its Opinion on the motion to dismiss the Third Amended Complaint, *see Harris II*, 2022 WL 3100663, at *15-17; Reply at 5.

Harris's handwritten Rule 56.1 counter-statement fares no better. First, there is at least a reasonable question as to whether the document complies with the requirement of Local Rule 11.1 that every paper "be plainly written . . . without erasures or interlineations which materially deface it." The Rule 56.1 counter-statement also largely fails to "cit[e] to evidence which would be admissible," as required by Local Rule 56.1(d). Harris's repeated requests for the Court to "see document" and the like will not suffice. *See, e.g.*, Pl. Counter 56.1 Stmt. ¶¶ 19 ("see supporting statement/email"); 31 ("see document"), 33 ("see documentation"). And, perhaps worst of all, Harris appended over 600 pages of materials to her opposition to summary judgment that the City contends were never produced during fact discovery and portions of which contained unredacted social security numbers of non-parties. *See* Motion to Strike at 1. In addition to flagrantly violating Federal Rule of Civil Procedure 5.2(a)(1), this error also required the Honorable Sarah Netburn—to whom this case was referred for general pretrial supervision, *see* Dkt. 58—to

temporarily seal Harris's entire opposition on the City's motion to prevent further damage. *See* Dkts. 107, 108.

This litany of procedural blunders leaves the Court grappling with a fundamental question throughout this Opinion and Order: how much solicitude is too much solicitude? This affects the Court's review of both the record and the underlying merits of the City's motion. As to the former, the City moves to strike the documents that Harris appended to her opposition and any references to those documents in her Rule 56.1 counter-statement under Federal Rule of Civil Procedure 37(c)(1), contending that permitting Harris to rely on these documents would render the City "hamstrung in [its] ability to defend against [Harris's] claims." Motion to Strike at 3. As the City points out, Harris's response to this motion in general only attempted to relitigate the merits of the case, *see* Opposition to Motion to Strike at 2-6, although Harris did argue that some of the unredacted documents "w[ere] truly inadvertent," other documents had already been submitted to the Court in some capacity, and, more generally, that she lacked sufficient legal guidance, *id.* at 1, 3. The Court is sympathetic to both parties. Harris cannot be faulted for being "not well acquainted with the discovery process," as she put it, *id.* at 3, but obligating counsel for the City to sift through hundreds of pages of what was nothing short of a post-discovery document dump would be patently unfair. Ultimately, however, "[b]ecause the Court has not relied on the challenged materials in ruling on this motion, the motion to strike is denied as moot." *Gray v. Alpha & Omega Semiconductor Ltd.*, No. 20 Civ. 2414 (RA), 2021 WL 4429499, at *5 n.3 (S.D.N.Y. Sept. 27, 2021). This denial is without prejudice to the City renewing the motion to strike should this matter proceed to trial.

Turning to the merits, and as the City itself acknowledges, "where a *pro se* plaintiff fails to submit a proper Local Rule 56.1 statement in opposition to a summary judgment motion, the

Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11 Civ. 3872 (ER), 2013 WL 2922483, at *1 (S.D.N.Y. June 14, 2013) (alterations omitted).  This maxim comports with the principle that a district court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file [a Local Rule 56.1] statement." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks omitted), *abrogated on unrelated grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), *as recognized in Moll v. Telesector Res. Grp.*, No. 20-3599, 2024 WL 820179, at *5 (2d Cir. Feb. 28, 2024).  Mindful of Harris's *pro se* status, the Court opts to do so here as well.

### III.   Discussion

As summarized in the Court's prior Opinion and Order on the City's motion to dismiss the Third Amended Complaint, four claims survived that motion:

> (1) Harris's age-based discrimination claims against the [City] under the ADEA and the NYSHRL arising from a disproportionate workload, for conduct occurring from September 28, 2018 to June 20, 2019; (2) Harris's age-based discrimination claim against the [City] under the NYCHRL, for conduct occurring up to June 20, 2019; (3) Harris's age-based hostile work environment claims against the [City] under the ADEA, the NYSHRL, and the NYCHRL involving conditions at the Brooklyn CASA; and (4) Harris's failure to accommodate claims against the [City] under the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL.

*Harris II*, 2022 WL 3100663, at *19.  The City now moves for summary judgment on each of these claims.  The Court will discuss them in turn.

### A.   ADA, Rehabilitation Act, and NYSHRL Failure to Accommodate Claims

The Third Amended Complaint's failure to accommodate claims under the ADA, Rehabilitation Act, NYSHRL and NYCHRL survived dismissal because "Defendants ma[de] no argument about why the Court should dismiss [them] besides asking the Court to dismiss the Third Amended Complaint 'in its entirety.'"  *Id.*, at *14.

11

On a preliminary note, the City accurately points out that the statute of limitations for Harris's Rehabilitation Act and NYSHRL claims is three years, whereas her ADA failure to accommodate claims must have accrued in the 300 days prior to her having filed the July 26, 2019 EEOC charge.  *See* Motion at 3; *Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 63 (2d Cir. 2021) ("The Rehabilitation Act lacks an express statute of limitations; courts thus apply the limitations period of a state's personal-injury laws.  In New York, this period is three years."); *Golden v. Verizon N.Y. Inc.*, No. 22 Civ. 5757 (RA), 2024 WL 664781, at *3 (S.D.N.Y. Feb. 16, 2024) ("As with all ADA [employment discrimination] claims, plaintiffs raising a failure to accommodate . . . claim must first have filed an administrative complaint (*i.e.*, a 'charge of discrimination') with the EEOC within 300 days 'after [an] alleged unlawful employment practice occur[s].'" (alterations in original) (quoting 42 U.S.C. § 2000e-5(e)(1) and citing *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999))); *Kirkland-Hudson v. Mt. Vernon Sch. Dist.*, 665 F. Supp. 3d 412, 446 (S.D.N.Y. Mar. 29, 2023) ("NYSHRL claims have a three-year statute of limitations.").  For Harris, that means that "any alleged acts of discrimination . . . under the ADA . . . that occurred before September 28, 2018 are untimely and the Court will not consider them as proof of such claims except as background evidence."  *Harris II*, 2022 WL 3100663, at *5.  As to the NYSHRL, since "[t]his three-year statute of limitations is tolled during the period in which a complaint is pending before the New York State Department of Human Rights or with the EEOC," the Court deems the NYSHRL statute of limitations to have accrued on July 26, 2016, or three years before Harris filed her EEOC charge.  *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 260 (2d Cir. 2023); *see* EEOC Charge at 9.

However, the City's invocation of the Rehabilitation Act's statute of limitations presents a thornier question of waiver.  "[T]he statute of limitations is ordinarily an affirmative defense that

must be raised in the answer," *Edwards v. McMillen Cap., LLC*, No. 21-1024, 2022 WL 16984534, at *1 (2d Cir. Nov. 17, 2022) (internal quotation marks omitted), and consequently, "an argument that a statute of limitations bars an action is [generally] waived if not raised in the answer to the complaint," *SEC v. Boock*, 750 F. App'x 61, 62 (2d Cir. 2019) (summary order) (internal quotation marks omitted).  *See also* Fed. R. Civ. P. 8(c).  Here, the City failed to invoke the Rehabilitation Act's statute of limitations in its motion to dismiss the Third Amended Complaint.  *See Harris II*, 2022 WL 3100663, at *5 n.7.  And despite the Court having explicitly noted this failure in its Opinion resolving that motion, *see id.*, the City once again did not invoke the Rehabilitation Act's statute of limitations in its answer to the Third Amended Complaint, although it did do so for Title VII, the ADA, the ADEA, and "plaintiffs' [sic] city or state law tort claims," *see* Dkt. 62 at 5-7. Nevertheless, "a district court may entertain unpleaded affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings," *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 176 (2d Cir. 2014), and the Second Circuit has found that opposing summary judgment can provide a plaintiff with the requisite opportunity to make such a showing, *see Lawson v. Homenuk*, 710 F. App'x 460, 466 (2d Cir. 2017).  *See also Scott v. City of Mt. Vernon*, No. 14 Civ. 4441 (KMK), 2017 WL 1194490, at *24 (S.D.N.Y. Mar. 30, 2017) ("[T]he law in the Second Circuit is clear that when a defendant raises an affirmative defense, like the statute of limitations, in its summary judgment motion papers that was not asserted in the pleadings, courts may nonetheless consider the argument so long as the plaintiff had an opportunity to respond.").  Yet Harris attempted no such showing in opposing summary judgment.  While the Court is sensitive to Harris's *pro se* status, it is equally true that "statutes of limitations 'for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for

13

particular litigants,' and strict adherence to such periods of limitations 'is the best guarantee of evenhanded administration of the law.'" *Ivanovic v. IBM Pers. Pension Plan*, 47 F. Supp. 3d 163, 167 n.4 (E.D.N.Y. 2014) (first quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984), then quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)), *aff'd*, 620 F. App'x 64 (2d Cir. 2015); *cf. Best v. Merchant*, No. 21 Civ. 779 (GHW), 2022 WL 17551935, at *4 (S.D.N.Y. Dec. 9, 2022) ("[W]hile *pro se* filings are held to more lenient standards, absent additional justification for equitable tolling, such tolling cannot 'be premised on [a plaintiff's] lack of education, *pro se* status, or ignorance of the right to bring a claim.'" (alteration in original) (quoting *Watson v. United States*, 865 F.3d 123, 133 (2d Cir. 2017))). The Court will thus enforce the Rehabilitation Act's three-year statute of limitations on Harris's failure to accommodate claim, meaning that this claim can only be premised on actions taken on or after March 5, 2017.

Turning to the merits, "ADA and Rehabilitation Act claims are governed under the familiar burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*." *Frantti v. New York*, 850 F. App'x 17, 19 (2d Cir. 2021) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see Tafolla v. Heilig*, 80 F.4th 111, 118 (2d Cir. 2023) (same for NYSHRL). "Under this framework, a plaintiff must establish a *prima facie* violation, which shifts the burden to the defendant to advance a legitimate, non-discriminatory reason for its actions, at which point the final burden is on the plaintiff to show that the defendant's proffered reason is pretextual." *Lawson*, 710 F. App'x at 462.

As relevant here, "[b]oth the ADA and the Rehabilitation Act require employers to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual.'" *Frantti*, 850 F. App'x at 19 (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009)). "A claim of disability discrimination under the NYSHRL is

governed by the same legal standards as govern federal ADA claims." *Tafolla*, 80 F.4th at 119

(internal quotation marks and alterations omitted).

> To establish a *prima facie* case of discrimination based on an employer's failure to
> accommodate a disability, under either the ADA or the Rehabilitation Act, a
> plaintiff must demonstrate that (1) the plaintiff is a person with a disability under
> the meaning of the statute in question; (2) an employer covered by the statute had
> notice of [her] disability; (3) with reasonable accommodation, [the] plaintiff could
> perform the essential functions of the job at issue; and (4) the employer has refused
> to make such accommodations.

*Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (cleaned up).  In addition, "[a]

plaintiff alleging that [she] was denied a reasonable accommodation bears the burdens of both

production and persuasion as to the existence of some accommodation that would allow [her] to

meet the essential eligibility requirements of the service, program, or activity at issue." *McElwee*

*v. Cnty. of Orange*, 700 F.3d 635, 642 (2d Cir. 2012).

The Court agrees with the City's characterization of Harris's failure to accommodate

claims as resulting from "(1) . . . sending [Harris] out to the field when she had arthritis in her knee

and (2) . . . serving her with disciplinary charges and disciplining her when she had depression."

Motion at 4 (citing Deft. 56.1 Stmt. ¶ 128).[6]

---

[6] Harris states that she "disagree[s] in part" with that assessment.  Pl. Counter 56.1 Stmt.
¶ 128.  She writes in relevant part that "[t]he primary reason was I knew that I needed support from
my former director to make such a request per my MD note, that was my plan, however, when I
spoke with [the] director she was non-supportive . . . .  Additionally, I was under Employee
Assistance trying to resolve my depression." *Id.*  Harris's reference to "need[ing] support from
[her] former director" seems to be an allusion to a December 2016 discussion with Roberson-
Steele discussed below.  Any injury stemming from this meeting is time-barred for ADA and
Rehabilitation Act purposes.  And while this incident may well be timely for NYSHRL purposes,
the Court need not address this incident as a separate potential failure to accommodate, since—as
discussed below—the Court denies summary judgment on the arthritis portion of Harris's failure
to accommodate claim based on the field visits alone.  And as for Harris's 2008 note to transfer
out of Staten Island, which she mentioned in her Rule 56.1 counter-statement, this incident is
untimely under all three statutes.  *See id.* ¶ 139.

With that understanding, the City brings several challenges to Harris's failure to accommodate claims. The Court will address these by alleged disability.

### 1. Arthritis-Based Failure to Accommodate Claims

The City mounts two objections to Harris's arthritis-based failure to accommodate claim. Neither is availing. First, as a threshold issue, the City claims that Harris's arthritis does not constitute a disability under the ADA or the Rehabilitation Act. *See* Motion at 7-8. "The ADA defines 'disability' to include, among other things, 'a physical or mental impairment that substantially limits one or more major life activities.'" *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020) (quoting 42 U.S.C. § 12102(1)(A)). The Rehabilitation Act defines disability for purposes of Section 504 by cross-referencing the ADA's definition. *See* 29 U.S.C. § 705(20)(B) (defining "individual with a disability" for purposes of Subchapter V of Title 29, Chapter 16 as "any person who has a disability as defined in section 12102 of Title 42"); *id.* § 794 (Section 504, which is located at Title 29, Chapter 16, Subchapter V). The City does not appear to dispute that arthritis is a physical impairment; rather, it challenges whether this condition substantially limited a major life activity.

The Court ultimately concludes that, drawing all inferences in Harris's favor, there is at the very least a genuine dispute of material fact as to whether her arthritis substantially limits the major life activity of walking. *See* 42 U.S.C. § 12102(2)(A) (including walking within the definition of "major life activities"). The City claims that Harris's "testimony that she can walk, but sometimes needs the assistance of a cane, is insufficient to establish a disability." Motion at 8 (citing to *Nadel v. Shinseki*, 57 F. Supp. 3d 288, 296 n.10 (S.D.N.Y. 2014) ("To the extent Plaintiff asserts that his limp or use of a cane limited his ability to walk, such limitations are not substantially limiting.")). To be sure, Harris did testify—as she concedes herself—that "there are times when I have to walk with the assistance of a cane." Harris Dep. Tr. at 201:6-7; *see* Pl. Counter 56.1 Stmt. ¶ 140. But

that is not the only walking-related limitation to which Harris testified.  She also testified that she "ha[s] to make sure there's an elevator" when taking the subway, since "[i]t's rough with the steps," Harris Dep. Tr. at 202:4-6, and that, in "certain periods when [she had] flare-ups, when [she] was in Brooklyn CASA . . . [she] could not do a whole lot of walking to the clients[ when] doing home visits, so [she] had to take a . . . cab ride." *Id.* at 49:16-19.  Simply put, Harris testified that her arthritis leads to more walking-related limitations than just the use of a cane.  "Reading the record in the light most favorable to [Harris], a rational juror could thus conclude that [Harris] was disabled under the ADA" and the Rehabilitation Act, particularly given that the Second Circuit has "cit[ed] favorably to district court decisions that found an 'inability to stand, sit, or walk' for more than fifteen or thirty minutes probative of a substantial limitation finding." *Verne v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 5427 (JPC), 2023 WL 6387274, at *6 (S.D.N.Y. Sept. 29, 2023) (citing *Parada v. Banco Industrial de Venez., C.A.*, 753 F.3d 62, 69-70 (2d Cir. 2014)).

The City also claims that Harris "cannot prevail on her failure to accommodate claim as there is no evidence that [she] sought a reasonable accommodation."  Motion at 4.  This argument gestures to the maxim that "an employer cannot refuse to make an accommodation that it was never asked to make."  *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 18 (2d Cir. 2015) (cleaned up).  The City does correctly note that Harris testified that she did not bring up her arthritis "when [Roberson-Steele] asked [her] to go to the field."  Harris Dep. Tr. at 111:20-22; *see* Motion at 4.  The challenge for the City, however, is the next part of Harris's statement at her deposition, which was that Roberson-Steele "knew about [Harris's] arthritis already[ b]ecause I was on a cane . . . [and b]ecause I had submitted a [doctor's] note."  Harris Dep. Tr. at 111:23-25.  Harris also testified about an incident—although she did not mention the date—when Roberson-Steele inquired why she had not yet left the office, to which Harris replied that she was "waiting on a cab

because my knee's cutting up." *Id.* at 113:16-20.  And, perhaps most importantly, Harris also testified about a December 2016 discussion with Roberson-Steele in which Harris asked whether Roberson-Steele would support her "transferring, as a [r]easonable [a]ccommodation, to another more convenient office" apparently because of her arthritis, *id.* at 55:6-8, only to be met with "no[] . . . support," *id.* at 57:13-14.  *See generally id.* at 54:2-4, 14-17 (describing the meeting).

Drawing all inferences in her favor, Harris's testimony suggests that Roberson-Steele was likely aware of Harris's arthritis by the time Harris allegedly was sent to do field visits during the relevant period.  And, given that conclusion, the fact that Harris failed to explicitly make a reasonable accommodation request for the field visits does not necessarily defeat her arthritis-based failure to accommodate claim.  The Second Circuit has held that "an employer has a duty reasonably to accommodate an employee's disability if the disability is obvious—which is to say, if the employer knew or reasonably should have known that the employee was disabled," *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008), and, in such a scenario, "an employer [can be] required to act proactively to accommodate the disability of an employee even if the employee does not request accommodation," *McBride*, 583 F.3d at 102.  *See Garcia v. Kings Cnty. Hosp. Ctr.*, No. 16 Civ. 3151 (ER), 2018 WL 389212, at *5 (S.D.N.Y. Jan. 11, 2008) ("It is true that in cases in which the disability was known or obvious, and the employer thus knew or reasonably should have known of the need for an accommodation, an employee need not issue an express request for accommodation.").  Harris's testimony at the very least raises a genuine issue of material fact as to whether the City was aware of her arthritis by the time she was sent on the relevant field visits.  The Court thus denies summary judgment on Harris's ADA, Rehabilitation Act, and NYSHRL arthritis-based failure to accommodate claims.

### 2.   Depression-Based Failure to Accommodate Claims

The City mounts several challenges to Harris's depression-based failure to accommodate, but the Court need only address one.  In short, Harris's depression-based failure to accommodate fails because she has not requested a *reasonable* accommodation.  Harris made clear multiple times during her deposition and again in her Rule 56.1 counter-statement that her fundamental objection to the HRA's course of conduct—at least as related to her depression—was that the agency disciplined her while she was depressed.  *See* Harris Dep. Tr. at 88:6-23; *id.* at 198:5-9 (responding when asked "what disability do you feel HRA failed to accommodate you for?" in relevant part that "when they served me with the disciplinary [sic], I was under an Employee Assistance [Program].[7]  I was very depressed."); Pl. Counter 56.1 Stmt. ¶ 128 ("I was under Employee Assistance trying to resolve my depression.").[8]  The Second Circuit has made clear that "[a] requested accommodation that simply excuses past misconduct is unreasonable as a matter of law." *McElwee*, 700 F.3d at 641.  In other words, even if the conduct that formed the basis of the disciplinary measures to which Harris was subject ultimately stemmed from her depression, that depression would not excuse her misconduct; consequently, asking to be completely immunized from disciplinary measures merely because of her participation in the Employee Assistance Program for depression is not a request for a reasonable accommodation.  *Cf. Szuszkiewicz v.*

---

[7] For context, the City describes the Employee Assistance Program as a program "provided through an entity entirely separate from defendant HRA (NYC Office of Labor Relations) and [that] . . . only provides education, information, counseling and individualized referrals."  Reply at 7 n.4 (internal quotation marks omitted).

[8] To be sure, Harris also seems to object to not receiving some sort of accommodation—seemingly also lesser disciplinary action—when an employee who, according to Harris, "was operating a private business out of a civil service location" was given some sort of accommodation. Harris Dep. Tr. at 199:19-20; *see generally id.* at 198:23-200:4.  However, as counsel for the City suggested during the deposition, that allegation is irrelevant to Harris's failure to accommodate claim because it is unrelated to any disability she had.  *See id.* at 199:2-4.

*JPMorgan Chase Bank*, 257 F. Supp. 3d 319, 327-28 (E.D.N.Y. 2017) ("As Justice Sotomayor has explained, that a disabled plaintiff's 'misconduct was a manifestation of his disability is immaterial because the ADA does not immunize [him] from discipline or discharge for incidents of misconduct in the workplace.'" (quoting *Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 289 (S.D.N.Y. 1999) (Sotomayor, J.), *aff'd*, 205 F.3d 1327 (2d Cir. 2000))).

The Court thus grants summary judgment in favor of the City on Harris's depression-based ADA, Rehabilitation Act, and NYSHRL failure to accommodate claim.[9]

## B.    ADEA and NYSHRL Age Discrimination Claims

As the City points out, the only aspect of Harris's age employment discrimination claim under the ADEA, the NYSHRL, and the NYCHRL that survived the motion to dismiss was Harris's "'disproportionately heavy workload' relative to other similarly situated employees." *Harris II*, 2022 WL 3100663, at *10 (quoting *Feingold v. New York*, 366 F.3d 138, 152-53 (2d Cir. 2004)).

The burden-shifting framework set forth in *McDonnell Douglas* governs Harris's age discrimination claim under both the ADEA and the NYSHRL. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105-06 (2d Cir. 2010). As described above, to succeed under this framework, "a plaintiff must first demonstrate a *prima facie* case of employment discrimination by showing that: '(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'" *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020) (quoting *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019)).

---

[9] Given that conclusion, the Court need not address the City's argument that Harris's depression is not a disability under the ADA and Rehabilitation Act. *See* Motion at 8-9.

"[O]nce a plaintiff produces minimal evidentiary support for the claim of discriminatory motivation, the burden of production shifts to the employer to articulate a non-discriminatory reason for the adverse employment action." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). If an employer meets this burden, a plaintiff "must prove that the employer's proffered reason was a pretext for discrimination . . . by presenting facts, which taken in [her] favor, suffice to show that a triable issue exists as to whether [her] age was a but for cause of" the adverse employment action. *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) (internal quotation marks omitted) (ADEA).

It bears mention, however, that whether the NYSHRL also requires but-for causation remains an open question in the Second Circuit, particularly in light of 2019 amendments to the statute that provided that "[t]he provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed." N.Y. Exec. Law § 300; *see Nnebe v. City of New York*, No. 22 Civ. 3860 (VEC) (SLC), 2023 WL 9100339, at *15 n.9 (S.D.N.Y. Nov. 9, 2023) ("The Second Circuit has yet to hold explicitly that the but-for causation standard applies to claims under the NYSHRL, but has implicitly applied the but-for standard to NYSHRL claims on several occasions." (internal quotation marks omitted)). Some courts in this District have held that the amendment "rendered the standard for NYSHRL claims closer to the standard of the NYCHRL." *Doolittle v. Bloomberg L.P.*, No. 22 Civ. 9136 (JLR), 2023 WL 7151718, at *7 (S.D.N.Y. Oct. 31, 2023) (internal quotation marks and alterations omitted). Nevertheless, this dispute is of no moment, since the Court concludes that summary judgment should be denied even under the more stringent but-for causation standard.

The City challenges the *prima facie* case and contends that the HRA had legitimate business reasons for Harris's workload.  These arguments do not prove availing.

As for the *prima facie* case, the City does not appear to challenge that Harris—who was born in 1950, *see* Deft. 56.1 Stmt. ¶ 1—is part of the protected class and was qualified for her position.  Rather, the City argues both that she suffered no adverse employment action and that no reasonable factfinder could find an inference of discrimination.  The Court will discuss the inference of discrimination below, since "a plaintiff who can prevail at the third stage of the *McDonnell Douglas* process has necessarily demonstrated circumstances giving rise to an inference of discrimination, and a plaintiff who cannot prevail at the third stage cannot prevail on his/her claim whether or not there exist circumstances giving rise to an inference of discrimination."  *Verne*, 2023 WL 6387274, at *7 (internal quotation marks omitted).

As to adverse action, the City characterizes Harris's disproportionate workload claim as being premised on "making three or four home visits over the course of three months, a single difficult deadline in 2018 or 2019, and the assignment of several difficult cases."  Motion at 16.  The City further contends that "[b]ecause . . . home visits are within the job duties of the Supervisor III title, Plaintiff cannot show that her terms and conditions of employment were changed at all, let alone to a level amounting to an adverse action," *id.* at 17, and points to aforementioned job description for Supervisor III (Social Services) that lists "making field visits" as a "typical task," Macioce Decl., Exh. C at 2.  For her part, Harris readily concedes that Supervisor IIIs did have to go on field visits as a part of their job, although she claims that they only "usually [did so in] exceptional circumstances."  Pl. Counter 56.1 Stmt. ¶ 6.  The challenge with the City's argument is that, read in light most favorable to Harris, her objection to the field visits at least partly stems from the fact that she made field visits for cases that were not assigned

to her.  That objection is reflected in her deposition—during which she testified that, while she could not "speak to each" of the times in which Roberson-Steele sent her on field visits from September 2018 to January 2019, "when [Roberson-Steele] asked me to go to the field, I would have to go to the [Supervisor] III to cover the case, to find out why I was going."  Harris Dep. Tr. at 109:20-22.  She then elaborated that she knew other employees in her position were not ordered to do so because "when I was going to the field on their cases, most of them were not cases assigned to me.  I had to go to [the other employees] to get a briefing on why I was going out there."  *Id.* at 110:25-111:3.  In objecting to the City's contention that "[a]ll Supervisor IIIs[] periodically had to go into field if there was a serious enough problem," Deft. 56.1 Stmt. ¶ 75, Harris reiterated in her Rule 56.1 counter-statement that she disagreed because "I only have knowledge of my receipt of directives from Roberson-Steele to visit clients, some of which were not assigned to my area of responsibility, but I was directed to go," Pl. Counter 56.1 Stmt. ¶ 75.  In other words, Harris's objection seems to be that at least some of the field visits to which Roberson-Steele directed her to go were beyond the scope of her job duties.  That Harris was generally obligated among her duties to go on field visits therefore does not negate such assignments constituting adverse employment actions.

Of course, the mere fact of these extra assignments does not alone constitute an adverse employment action.  As noted in the Court's decision on the motion to dismiss the Third Amended Complaint, "the receipt of undesirable assignments must be accompanied by a material detriment to an employee's working conditions to constitute an adverse employment action."  *Harris II*, 2022 WL 3100663, at *10 (internal quotation marks omitted); *see Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) ("An adverse employment action is a materially adverse *change* in the terms and conditions of employment.  To be materially adverse, a change in working conditions must be

more disruptive than a mere inconvenience or an alteration of job responsibilities." (internal quotation marks omitted)).  Here, Harris's deposition supported the Third Amended Complaint's allegation that "Roberson-Steele assigned her a disproportionately heavy workload involving violent clients that compromised her personal safety." *Harris II*, 2022 WL 3100663, at *10.  Harris testified, for instance, that Roberson-Steele directed her to visit a client whose case "was not in [Harris's] team" and "whose brother threatened to throw hot water."  Harris Dep. Tr. at 116:4-25, 117:2-4, 118:13.  Another time, Harris went on a field visit to a client who, as the City put it, "had thrown a television set and had choked another person in his home."  Deft. 56.1 Stmt. ¶ 82.  To be sure, Harris stated that "as the Adult Protective Services Liaison was one of [her] roles, [she] did encounter some of the toughest cases in Brooklyn CASA[,] which was expected[,] however some super[s] took no action to resolve [sic]."  Pl. Counter 56.1 Stmt. ¶ 116.  This admission might mean that Harris was used to working on more difficult cases.  But, as her reference to co-workers not taking action suggests, what appears to have changed in the 2018-2019 period was that Roberson-Steele was allegedly "sending [her] to the field a lot more," and that change could have exposed Harris to more dangerous situations than she would have been had she not been directed to go on as many field visits.  Harris Dep. Tr. at 86:22-23.[10]  As was already noted, Roberson-Steele denied both having "order[ed] Harris to perform field visits on cases that were not assigned to her team," Roberson-Steele Decl. ¶ 17, and having "sent [Harris] out to the field three or four times during the period of September 2018 to January 2019," *id.* at ¶ 12.  But the sum total of this evidence

---

[10] To be sure, it is not entirely clear that Harris was referring to the 2018-2019 period when making this statement, but the Court can infer so because counsel for the City was asking her about a portion of her complaint in which she alleged that "[f]rom September 2018 to 2019," Roberson-Steele made "affirmative attempts to take advantage of my disability as a way of forcing me to retire."  TAC Addendum ¶ 1; *see* Harris Dep. Tr. at 86:18-21.  *Cf. Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 68 (2d Cir. 2023) (noting that, on a motion for summary judgment, a court is to "constru[e] the evidence in the light most favorable to the non-moving party).

suggests that a reasonable factfinder could find that Harris was subjected to an adverse employment action through the alleged field visits, and the related factual disputes constitute genuine issues of material fact.

The City also has likely not met its burden of production of a non-discriminatory reason for the field visits, although it is hard to fault the City for failing to do so when Roberson-Steele denies ever having sent Harris on the field visits in question. *See* Roberson-Steele Decl. ¶ 12. All the City argues with respect to the field visits is that Harris's "claims fail as being sent to the field . . . [was] motivated by legitimate, non-discriminatory reasons." Motion at 18. This formulaic recitation of the legal standard by itself does not pass muster. To be sure, the City's citation to paragraphs 6, 8, and 75 of its Rule 56.1 statement—which, taken together, essentially state that field visits are a job duty for Supervisor IIIs and that providing home care services is CASA's "purpose"—would appear to suggest that the City's proffered business reason is that Roberson-Steele was simply requiring that Harris do her job.

But even if the Court were to credit this argument, that would not militate toward a grant of summary judgment in the City's favor: a genuine issue of material fact still remains as to Roberson-Steele's intent behind assigning Harris these extra field visits. "The Second Circuit has counseled that '[a] trial court must be cautious about granting summary judgment to an employer [in a discrimination case] when . . . its intent is at issue.'" *Verne*, 2023 WL 6387274, at *5 (quoting *Gallo v. Prudential Residential Servs., LP*, 22 F.3d 1219, 1224 (2d Cir. 1994)); *see also Banks*, 81 F.4th at 258 ("We have repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent." (internal quotation marks omitted)). At this stage, Harris has the burden of identifying "sufficient evidence to support a rational finding that the legitimate, non-

discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Verne*, 2023 WL 6387274, at *8 (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996)). "The Court evaluates the proffered evidence 'as a whole[,] rather than in a piecemeal fashion.'" *Id.* (alteration in original) (quoting *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 76 (2d Cir. 2016)).

Here, Harris stated that she "strongly believe[s Roberson-Steele] ordered [Harris] to go [to the field visits in question] to force retirement/retaliation." Pl. Counter 56.1 Stmt. ¶ 63.[11] The City broadly speaking disputes two methods through which Harris could raise an inference of discrimination and—although the City does not style it as such—her arguments of pretext as well: the ages of Harris's co-workers and Roberson-Steele's alleged comments concerning Harris's retirement. The Court will address each in turn. The Court ultimately credits the City's argument as to Harris's peers, but not as to Roberson-Steele.

Starting first with Harris's co-workers' ages, the City avers that the fact that Roberson-Steele and the three other Supervisor IIIs who Harris alleges did not make field visits are all above the age of 40 undercuts an inference of age discrimination. *See* Motion at 13; 29 U.S.C. § 631(a) ("The prohibitions in this chapter [*i.e.*, the ADEA] shall be limited to individuals who are at least 40 years of age."); N.Y. Exec. Law § 296(3-a) (NYSHRL age discrimination provisions apply to any person over eighteen). With respect to the other Supervisor IIIs, Harris agrees that the three

---

[11] In addition, the City accurately points out that, as noted, Harris testified that Roberson-Steele was sending her "to the field a lot more" in response to counsel for the City's questioning about how Roberson-Steele allegedly took advantage of her disability. Harris Dep. Tr. at 86:22-23; *see* Deft. 56.1 Stmt. ¶ 63 (citing to this testimony). The City argues that Harris's age discrimination claim is undermined by the alleged fact that Harris "believed these visits were to take advantage of her disability and not because of her age." Motion at 15. But nowhere in the testimony to which the City cites does Harris disclaim age discrimination as motivating these assignments.

in question are Louise Lloyd, Alan Block, and a woman to whom Harris referred as "Miss Hampton." *See* Deft. 56.1 Stmt. ¶ 65; Pl. Counter 56.1 Stmt. ¶ 65; Harris Dep. Tr. at 49:23-24. While Harris seems to have stated that she could not recall Hampton's first name, Pl. Counter 56.1 Stmt. ¶ 67, Roberson-Steele affirmed that "[t]he only Supervisor III who [she] supervised[] with the last name Hampton[] at Brooklyn CASA[] was Betty Moore-Hampton," Roberson-Steele Decl. ¶ 18.  Harris's recollection that "Miss Hampton" retired the "same year" that Roberson-Steele first started at the Brooklyn CASA would seem to corroborate Roberson-Steele's declaration that the employee in question must have been Betty Moore-Hampton, *see* Pl. Counter 56.1 Stmt. ¶ 68, since the City provided documentation showing that Moore-Hampton retired in January 2014, *see* Macioce Decl., Exh. P at 3 (City payroll documentation listing Moore-Hampton's "voluntary retirement" date as January 22, 2014), and Roberson-Steele declared that she "served [as] . . . Director of the Brooklyn CASA office from late 2013 to early 2014" to February 2020, Roberson-Steele Decl. ¶ 1.

With that understanding, the City points to payroll records showing that Moore-Hampton was born in 1951, Lloyd in 1952, and Block in 1953—*i.e.*, only one, two, and three years after Harris, respectively.  Deft. 56.1 Stmt. ¶¶ 70-72; *see id.* ¶ 1 (stating that Harris was born in 1950). Harris at least does not appear to directly dispute this information.  *See* Pl. Counter 56.1 Stmt. ¶¶ 70-72.  The City is correct to note that these facts would undercut an inference of *age* discrimination to the extent that Harris meant to make out a disparate-treatment claim on the basis of the field visits.  *See* Motion at 13.  After all, it is axiomatic that raising an inference of discrimination "through comparison . . . [requires] another employee *outside the protected class*." *Zheng-Smith v. Nassau Health Care Corp.*, No. 20-3544, 2021 WL 4097316, at *2 (2d Cir. Sept. 9, 2021) (emphasis added).

But the same logic is less convincing in Roberson-Steele's case.  While the City points out that she was born in 1970 and thus in the protected class for ADEA, NYSHRL, and NYCHRL purposes, Roberson-Steele is still approximately 20 years younger than Harris.  "[B]ecause the ADEA prohibits discrimination based on age, not class membership, a plaintiff may establish a *prima facie* case when the comparative person is also protected by the ADEA." *Toomer v. Dep't of Educ. of City of N.Y.*, No. 09 Civ. 9034 (RLE), 2013 WL 1286161, at *9 (S.D.N.Y. Mar. 28, 2013) (citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312, 313 (1996)).  Given their age gap, the fact that Roberson-Steele is in the same protected class as Harris will not alone defeat an inference of age discrimination.

The City raises two arguments related to Harris's allegation that Roberson-Steele "loudly ordered me to retire" and generally made a number of age or retirement-related comments from 2017 to 2019.  TAC Addendum ¶ 9(a); *see also* Deft. 56.1 Stmt. ¶¶ 13, 17, 21, 23 (describing some of these comments).

First, the City argues that Harris's description of Roberson-Steele's comments—or her description of other people's recollection of these comments—are hearsay or hearsay-within-hearsay.  *See* Motion at 14.  In doing so, the City points to the maxim that "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment, and a district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence." *Picard Tr. for SIPA Liquidation of Bernard L. Madoff Inv. Sec. LLC v. JABA Assocs. LP*, 49 F.4th 170, 181 (2d Cir. 2022) (internal quotation marks omitted); *see* Motion at 14.  However, the City's argument fails to recognize that at least the statements Harris reported that Roberson-Steele allegedly made directly to her are admissible under Federal Rule of Evidence 801(d)(2)(D), which provides an exclusion from the rule against hearsay for statements "offered

against an opposing party [that] . . . w[ere] made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D); *see Cameron v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 9900 (KMW), 2018 WL 1027710, at *4 (S.D.N.Y. Feb. 21, 2018) ("Under Rule 801(d)(2)(D), an employee's statement is not hearsay when used against an employer, where the record shows '(1) the existence of [an] agency relationship [between the declarant and the employer], (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency.'" (alterations in original) (quoting *United States v. Rioux*, 97 F.3d 648, 660 (2d Cir. 1996))). The Second Circuit has held that "a declarant 'need only be an advisor or other significant participant in the decision-making process that is the subject matter of the statement' for the statement 'to be deemed within the scope of his agency.'" *Weaver v. Bloomberg L.P.*, No. 22 Civ. 8201 (PAE), 2024 WL 693166, at *11 (S.D.N.Y. Feb. 20, 2024) (quoting *Rioux*, 97 F.3d at 661).

Here, there can be little doubt that Roberson-Steele was at the very least an "advisor," if not a "significant participant," in any decision-making process concerning Harris's employment status. Indeed, the ALJ's 2018 Report and Recommendation illustrates this point: the HRA relied heavily on Roberson-Steele in support of their case, *see, e.g.*, ALJ Report & Recommendation at 8 ("[The HRA] alleged that [Harris] committed insubordination and related misconduct by failing to obey directives from Ms. Roberson-Steele on five occasions . . . ."), during which the HRA sought "termination of [Harris]'s employment," *id.* at 18, although they were not successful in doing so. As the Second Circuit has written in the context of large local government agencies, "it is hard to imagine how [managers] could make informed decisions regarding [lower-level employees] . . . without the input of their supervisors." *Rioux*, 97 F.3d at 661. Given that logic, Roberson-Steele's direct statements to Harris that ostensibly applied "unrelenting pressure to

retire," TAC Addendum ¶ 1, were made within the scope of the agency relationship for purposes of the third prong of the Rule 801(d)(2)(D) analysis, and the City cannot reasonably dispute the satisfaction of the first two prongs of that analysis.

And, while a close call, those statements just barely suffice to create a genuine issue of material fact as to whether age was the but-for cause of Roberson-Steele's assignment of the aforementioned field visits. Most relevantly for present purposes, the Third Amended Complaint alleges that Roberson-Steele "loudly ordered [Harris] to retire, sometimes within earshot of other staff" on eight different occasions in May and June 2019, TAC Addendum ¶ 9(a); *see Harris II*, 2022 WL 3100663, at *2, which Harris reiterated during her deposition, testifying that "all of those dates that [she] gave [are accurate]," Harris Dep. Tr. at 99:16-17. Harris also testified, in line with the Third Amended Complaint, that Roberson-Steele shouted "why do[esn't Harris] retire" and stated "something about, [Harris] was the oldest employee" in May 2018. *Id.* at 107:1-3; *see* TAC Addendum ¶ 9(a). Roberson-Steele, for her part, denies the May 2018 incident, Roberson-Steele Decl. ¶ 8, or ever "tell[ing Harris] that she should retire or resign," *id.* ¶ 4.

The City also argues that Roberson-Steele's retirement-related comments should be disregarded as "stray remarks." *See* Motion at 14-15. The Second Circuit has encouraged district courts to assess four factors "[i]n determining whether a remark is probative" of employment discrimination:

> (1) who made the remark (*i.e.*, a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (*i.e.*, whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (*i.e.*, whether it was related to the decision-making process).

*Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010). Roberson-Steele's statements are probative of discrimination under two of the four factors; namely, the first, given her supervisor

role, and the third, as "a comment made to an employee during a meeting that [she] *should* retire constitute[s] *additional* evidence of age discrimination," *Thompson v. ABVI Goodwill Servs.*, 531 F. App'x 160, 162 (2d Cir. 2013) (internal quotation marks omitted).  Indeed, comments by a supervisor that an employee is of an age that she should retire directly reflects that supervisor's view of whether the employee's age disqualifies her for continuing in that job.  The alleged comments also were made in the months leading up to the September 2018 to January 2019 field visits, as well as just a few months after those field visits.  Mindful of Harris's *pro se* status and the sheer number of comments that Roberson-Steele is alleged to have made about Harris's retirement both before and after the September 2018 to January 2019 timespan, the Court deems Roberson-Steele's alleged comments to be barely sufficient to raise a genuine issue of material fact as to intent.  The Court thus denies summary judgment on Harris's ADEA and NYSHRL age discrimination claim.  *See Gallo*, 22 F.3d at 1224 ("A trial court must be cautious about granting summary judgment to an employer when . . . its intent is at issue." (citations omitted)).

## C.     ADEA and NYSHRL Hostile Work Environment Claims

The Opinion on the motion to dismiss the Third Amended Complaint allowed Harris's ADEA, NYSHRL, and NYCHRL age-based hostile work environment claim to go forward as predicated on "work conditions at the Brooklyn CASA."  *Harris II*, 2022 WL 3100663, at *13.

The "ADEA's prohibitions on discrimination 'encompass requiring people to work in a discriminatorily hostile or abusive environment.'"  *Verne*, 2023 WL 6387274, at *12 (quoting *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 41 (2d Cir. 2019)).  "To prevail on a hostile work environment claim, [a plaintiff] must show (1) that the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer."  *Fox*

*v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (internal quotation marks omitted).  "To survive summary judgment on a claim of hostile work environment harassment, a plaintiff must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Banks*, 81 F.4th at 261 (internal quotation marks omitted).  "Although the victim must subjectively perceive the conduct as abusive, the misconduct shown also must be severe or pervasive enough to create an objectively hostile or abusive work environment."  *Fox*, 918 F.3d at 74 (internal quotation marks omitted).  "Courts look to the totality of the circumstances to determine whether a plaintiff has met this burden, including proof of the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance." *Id.* (alterations in original) (internal quotation marks omitted).  "Importantly, a plaintiff must 'demonstrate that she was subjected to the hostility because of her membership in a protected class.'" *Murtha v. N.Y. State Gaming Comm'n*, No. 17 Civ. 10040 (NSR), 2019 WL 4450687, at *8 (S.D.N.Y. Sept. 17, 2019) (quoting *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999)).

As multiple courts in this District have noted, "[o]n October 11, 2019, amendments to the NYSHRL came into effect that eliminated the 'severe and pervasive' standard" for hostile work environment claims brought under that statute. *Tortorici v. Bus-Tev, LLC*, No. 17 Civ. 7507 (PAC) (KHP), 2021 WL 4177209, at *13 (S.D.N.Y. Sept. 14, 2021) (citing to N.Y. Exec. Law § 300); *see also Samuels v. City of New York*, No. 22 Civ. 1904 (JGK), 2023 WL 5717892, at *9 (S.D.N.Y. Sept. 5, 2023).  The Second Circuit recently construed these amendments as only applying to claims that accrued after the effective date thereof.  *See Phillips v. Fashion Inst. of Tech.*, No. 23-375 (2d Cir. Mar. 8, 2024), 2024 WL 1005500, at *1 n.1; *see also Tortorici*, 2021 WL 4177209,

at *13 ("[T]he amendment to the NYSHRL is not retroactive, meaning that the 'severe and pervasive' standard still applies to claims arising from conduct predating the effective date of the amendments."). The Court will thus analyze Harris's NYSHL age-based hostile work environment claim under the same standard as her ADEA claim.[12]

The City characterizes Harris's age-based hostile work environment claim as "relying on the following allegations":

> (1) . . . [Harris] was asked about retirement four times over the course of three years by Roberson-Steele, (2) she was subjected to fourteen written reprimands while working at Brooklyn CASA over the course of three years, (3) Roberson-Steele verbally criticized her work on two occasions, (4) she had to make three or four field visits between September 2018 to January 2019, (5) she had a short timeframe to contact a large number of clients due to a vendor change, (6) [Harris] had two difficult case assignments, (7) she had to perform officer manager duties, (8) . . . Roberson-Steele assigned her problematic subordinates and (9) . . . Roberson-Steele came into a client interview and supposedly caused a client to begin cursing at Plaintiff.

---

[12] To be sure, Harris could not remember—nor has the City clarified—the dates of some of complained-of actions in 2019 within the nine categories detailed below. These include (1) the allegedly "impossible deadlines" Roberson-Steele gave Harris for assignments sometime in 2018 or 2019, *see* Harris Dep. Tr. at 93:17-18; (2) Roberson-Steele's write-up of Harris sometime in 2019 "for failing to prepare for a case audit in Manhattan," Roberson-Steele Decl. ¶ 32; *see also* Harris Dep. Tr. at 69:12-73:8; (3) Roberson-Steele sending Harris "[e]ither in 2018 or 2019 . . . to a Seminar at the World Trade Center," Roberson-Steele Decl. ¶ 33, which Harris contends was "to cover [for] the Office Manager[ and] had nothing to do with my ti[t]le [or] job responsibilities," Harris Dep. Tr. at 87:18-20; and (4) Harris being assigned "problematic and complex cases" between 2017 and 2019, Deft. 56.1 Stmt. ¶ 116; *see* Harris Dep. Tr. at 155:20. But Harris did not respond to the City's assertion that the "severe and pervasive" test applies to her NYSHRL claims, so the Court will not conduct an analysis under the amended NYSHRL standard. *See* Motion at 19. After all, while mindful of Harris's *pro se* status, the Court still has no obligation to "argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Islam v. Melisa*, No. 18 Civ. 2535 (KAM), 2020 WL 1452463, at *5 (E.D.N.Y. Mar. 24, 2020) (internal quotation marks omitted). This approach is especially warranted given the uncertainties that still remain around the application of the amended NYSHRL standard. *See, e.g.*, *Wheeler v. Praxair Surface Techs., Inc.*, No. 21 Civ. 1165 (PAE), 2023 WL 6282903, at *11 (S.D.N.Y. Sept. 26, 2023) ("The case law . . . has yet to definitively resolve whether the NYSHRL's liability standard is now coextensive with that of the NYCHRL, or whether it requires more, so as to impose a standard between federal and city law.").

Motion at 20.  Harris broadly speaking does not appear to contest this description of her claim, but it bears mention that the City's recounting of at least the retirement-related comments does not appear to take into account all of the eight times in May and June 2019 when, according to Harris, Roberson-Steele ordered her to retire.  *See supra* III.B.

However, these discrepancies are of no moment, since Harris has failed to adduce sufficient evidence that any hostile work environment permeated the Brooklyn CASA because of her age. With the two exceptions discussed further below (*i.e.*, Roberson-Steele's retirement-related comments and the Section 75 Proceedings), the Court cannot discern any developed argument by Harris that these other categories were linked to age-based discrimination.  While Harris "may rely upon facially neutral conduct to bolster a harassment claim [since] the same individual [*i.e.*, Roberson-Steele] engaged in multiple acts of harassment, some overtly [based on a protected characteristic] and some not," *Daniel v. T&M Prot. Res., LLC*, 689 F. App'x 1, 3 (2d Cir. 2017) (internal quotation marks omitted), "their use still 'requires some circumstantial or other basis for inferring that incidents [age-]neutral on their face were in fact discriminatory,'" *Verne*, 2023 WL 6387274, at *13 (quoting *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002)).  In the absence of age-related arguments, Harris has not made such a showing.

As noted, the only plausible, overtly discriminatory conduct identified here—at least based on age—are Roberson-Steele's retirement-related comments and the Section 75 Proceedings, to the extent that overlap existed between those proceedings and the fourteen written reprimands. The Court concludes that these arguments fail to sufficiently make out a hostile work environment claim at this juncture.[13]

---

[13] It also bears mention that the Court's conclusion above that there is a genuine issue of material fact as to Harris's employment discrimination claim does not necessarily create a genuine

Turning first to the comments, it is important to note that the Court has already observed that these comments, at least as alleged, constitute "an unrelenting and abusive effort to pressure Harris into retirement." *Harris II*, 2022 WL 3100663, at *13. But the challenge for Harris is that the survival of her hostile work environment claim at the pleadings stage hinged on the combination of these comments with other alleged actions, *see id.* at *14, and the Court cannot now credit the notion that Roberson-Steele's comments alone illustrate a workplace "permeated with discriminatory intimidation, ridicule, and insult" on the basis of age, *Ben-Levy v. Bloomberg, L.P.*, 518 F. App'x 17, 20 (2d Cir. 2013). Indeed, even Harris herself does not appear to entirely link Roberson-Steele's comments to age discrimination. When asked about her allegation that Roberson-Steele applied "unrelenting pressure to retire because of my age," TAC Addendum ¶ 1, Harris testified that Roberson-Steele refused to consider her pleas regarding her need to support her disabled son seemingly around May or June 2019 and instead "continued to insist I retire[ b]ecause they were angry because I had reported wrongdoing." Harris Dep. Tr. at 85:12-14.[14] Harris's testimony appears to mirror her allegation that "Roberson-Steele had a pattern of retaliatory behavior against me. I feel it's because I reported illegal sales of food [and] other inappropriate behavior at [the] location." Pl. Counter 56.1 Stmt. ¶ 26. However, as was already noted, the Court dismissed Harris's retaliation claims in its Opinion on the motion to dismiss the Third Amended Complaint. *See Harris II*, 2022 WL 3100663, at *16-17.

---

issue for her hostile work environment claim, since "a hostile work environment claim requires a different legal analysis from that applicable to an employment discrimination claim." *Rivera v. Potter*, No. 03 Civ. 1991 (LAP), 2005 WL 236490, at *1 n. 2 (S.D.N.Y. Jan. 31, 2005).

[14] Harris also testified that Roberson-Steele "stepped up the pressure [to retire] coming up to the demotion. It was going on all along." Harris Dep. Tr. at 84:18-19. But it remains unclear what "all along" means in the context of the testimony.

To be sure, "[d]isparaging comments made daily clearly [can] constitute an actionable hostile work environment," and the May to June 2019 comments supposedly occurred with some level of frequency. *Almontaser v. N.Y.C. Dep't of Educ.*, No. 13 Civ. 5621 (ILG) (VMS), 2014 WL 3110019, at *8 (E.D.N.Y. July 8, 2014) (collecting cases). But comments about retirement, "which is a normal topic of conversation between an employer and an employee," will not suffice without "discriminatory overtones." *Antrobus v. N.Y.C. Health & Hosps. Corp.*, No. 21-891, 2023 WL 6784414, at *3 (2d Cir. Oct. 13, 2023) (internal quotation marks omitted). Viewed from that perspective, Roberson-Steele merely ordering Harris to retire or even inquiring whether Harris was "old enough to retire," without any further, more incendiary commentary about age, are insufficient to show a hostile work environment based on age. Harris Dep. Tr. at 84:25-85:2. As noted above, even Harris herself appears to attribute Roberson-Steele's push for retirement to a desire for retaliation as opposed to age discrimination. *See Todoverto v. McDonald*, No. 13 Civ. 4922 (JCM), 2016 WL 3826281, at *13 (S.D.N.Y. July 7, 2016) ("[C]all[ing] the older nurses 'seasoned' on a daily basis for a few months . . . can certainly be considered frequent, [but] the[se comments] simply were not offensive enough to be considered 'pervasive' in the context of a hostile work environment claim."). And the more incendiary of Roberson-Steele's alleged comments—specifically, her saying that Harris was "69 years old, why doesn't she retire" or pointing out in May 2018 that Harris "was the oldest employee" and asking why Harris does not retire, *see* Deft. 56.1 Stmt. ¶¶ 17, 24—simply occurred too infrequently to support a hostile work environment claim. *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 128 (2d Cir. 2019) ("Isolated, minor acts or occasional episodes do not warrant relief." (internal quotation marks omitted)).

As mentioned, the only other incident in the nine categories mentioned above that Harris appears to have explicitly linked to age-based discrimination is the Section 75 Proceedings. Harris testified that she "was in a[] non-supportive atmosphere. . . . If I had did [sic] something wrong, . . . I would have thrown in the towel, when they came after me at 67 years of age, with a disciplinary [sic], with retirement pain." Harris Dep. Tr. at 210:14-15, 21-24. While it is not entirely clear what Harris is referencing in this excerpt, her allusion to being 67 years old at the time—which would translate to approximately 2017, given her birthyear of 1950, *see* Pl. Counter 56.1 Stmt. ¶ 1—would logically appear to be a reference to the Section 75 Proceedings. For whatever qualms Harris may have about the motive behind them, the fact remains that "[l]egitimate reprimands by an employer are not abuse," a conclusion only further buttressed by the fact that both the HRA and Harris took full advantage of multiple opportunities to litigate the matters underlying the Section 75 Proceedings. *Fox*, 918 F.3d at 75; *see id.* (holding that disciplinary actions did not support a hostile work environment claim when the investigations that led to these actions were conducted "in accordance with . . . company policies, and [the relevant manager] concluded based on his interview with [the plaintiff] that both customer complaints constituted 'major' violations"). These proceedings thus do not tend to show a hostile work environment based on age.

The Court therefore grants summary judgment in favor of the City on Harris's ADEA and NYSHRL hostile work environment claims.

## D.   NYCHRL Claims

The following NYCHRL claims survived dismissal after the Court's prior Opinion: (1) Harris's failure to accommodate claims; (2) "Harris's age-based discrimination claim against the [City] under the NYCHRL, for conduct occurring up to June 20, 2019"; and (3) "Harris's age-

based hostile work environment claims against the [City] under . . . the NYCHRL involving conditions at Brooklyn CASA." *Harris II*, 2022 WL 3100663, at *19.

"Section 8-107(1)(a) of the NYCHRL makes it 'an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the [protected characteristic] of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.'" *Verne*, 2023 WL 6387274, at *16 (alterations in original) (quoting, in turn, *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F. 3d 102, 109-10 (2d Cir. 2013)). "Courts must analyze NYCHRL claims separately from any federal law claims and should construe the NYCHRL 'liberally for the accomplishment of the uniquely broad and remedial purposes thereof.'" *Bueno v. Eurostars Hotel Co., S.L.*, No. 21 Civ. 535 (JGK), 2022 WL 95026, at *8 (S.D.N.Y. Jan. 10, 2022) (quoting *Mihalik*, 715 F. 3d at 109). "The standard for a discriminatory act under the NYCHRL is more lenient than the federal standard. A plaintiff need only show that she was 'treated . . . less well, at least in part for a discriminatory reason.'" *Verne*, 2023 WL 6387274, at *16 (quoting, in turn, *Mihalik*, 715 F.3d at 110 n.8). "Under this standard, the conduct's severity and pervasiveness are relevant only to the issue of damages." *Mihalik*, 715 F.3d at 110. Nevertheless, "[t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive. . . . She must show that she has been treated less well at least in part because of her [protected status]." *Mihalik*, 715 F.3d at 110 (internal quotation marks omitted). "It is sufficient to 'show differential treatment of any degree based on a discriminatory motive.'" *Verne*, 2023 WL 6387274, at *16 (quoting *Gorokhovsky v. N.Y.C. Hous. Auth*., 552 F. App'x 100, 102 (2d Cir. 2014)).

The statute of limitations for the NYCHRL is three years.  As with the NYSHRL, "[a]lthough the Second Circuit has not yet resolved the question of whether EEOC charges toll the statute of limitations for NYCHRL claims, the weight of authority in this District holds that EEOC charges do toll NYCHRL claims." *Murillo-Roman v. Pension Bds-United Church of Christ*, No. 22 Civ. 8365 (JLR), 2024 WL 246018, at *8 (S.D.N.Y. Jan. 23, 2024) (internal quotation marks omitted).  The Court therefore deems Harris's NYCHRL claim to have accrued on July 26, 2016.

### 1.  Failure to Accommodate

As noted above, Harris's federal and NYSHRL failure to accommodate claims survive summary judgment as to arthritis and therefore "necessarily survive the more liberal standard of the NYCHRL." *Brown v. Metro. Dental Assocs.*, No. 21 Civ. 851 (CM), 2023 WL 5154415, at *7 (S.D.N.Y. Aug. 10, 2023).  After all, "under the NYCHRL, it is clear that under certain circumstances, an employer is required to act proactively and engage in an interactive process to accommodate the disability of an employee even if the employee does not request accommodation." *Velez v. Girraphic LLC*, No. 20 Civ. 5944 (JPC), 2021 WL 1873233, at *7 (S.D.N.Y. May 10, 2021) (internal quotation marks omitted).  "[T]he NYCHRL creates an independent duty to investigate feasible accommodations and affirmatively requires that, even in the absence of a specific request, an employer shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job provided that the disability is known or should have been known by the [employer]." *Id.* (second alteration in original) (internal quotation marks omitted).

Harris's depression-based NYCHRL failure to accommodate claim presents a closer call. The Court's justification for granting summary judgment on this claim—namely, that Harris's request to be insulated from disciplinary action was unreasonable—does not apply to the NYCHRL, since "[u]nlike the ADA, there are no accommodations [under the NYCHRL] that may

be 'unreasonable' if they do not cause undue hardship." *Van Vorst v. Lutheran Healthcare*, No. 21-4, 2021 WL 6101474, at *1 (2d Cir. Dec. 22, 2021) (quoting *Phillips v. City of New York*, 884 N.Y.S.2d 369, 378 (1st Dep't 2009)); *see also Jacobsen v. N.Y.C. Health & Hosps. Corp.*, 11 N.E.3d 159, 167 (N.Y. 2014) ("[U]nlike the State HRL, the City HRL places the burden on the employer to show the unavailability of any safe and reasonable accommodation and to show that any proposed accommodation would place an undue hardship on its business."). Nevertheless, the Court agrees with the City's argument that the NYCHRL does not immunize Harris from discipline because of her depression, which appears to gesture to "undue hardship" to the City. *See Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 36 (1st Dep't 2012) (noting that, under the NYCHRL, "[t]he mere fact that [plaintiff] may disagree with [his] employer's actions or think that [his] behavior was justified does not raise an inference of pretext" (alterations in original) (internal quotation marks omitted)); *Cuttler v. Fried, Frank, Harris, Shriver & Jacobson, LLP*, No. 10 Civ. 296 (DAB), 2012 WL 1003511, at *9 (S.D.N.Y. Mar. 23, 2012) ("[The] NYCHRL do[es] not require Defendant to excuse her admitted workplace misconduct as an accommodation of her disability."); *Izquierdo v. Bloomberg*, No. 400240/2008, 2009 WL 221097 (N.Y. Sup. Ct. Jan. 21, 2009) (dismissing a NYCHRL disability-based claim because "[t]he fact that petitioner may be an alcoholic does not mean that he is immunized from termination based on an otherwise legitimate, non-discriminatory reason, even if that reason may be linked in some way to his disability").

As with Harris's NYSHRL and federal failure to accommodate claims, the Court therefore grants summary judgment in favor of the City on Harris's depression-based NYCHRL failure to accommodate claim but denies summary judgment inasmuch as the claim is predicated on arthritis.

### 2. Age Discrimination

Under the NYCHRL, "summary judgment is [only] appropriate if the record establishes as a matter of law that discrimination or retaliation played no role in the defendant's actions." *Ya-*

*Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) (cleaned up).  That obviously is not the case here given the Court's prior conclusion about Harris's ADEA and NYSHRL age discrimination claims.  In other words, "[i]f a reasonable factfinder could conclude that age was a but-for cause of the [allegedly disproportionately heavy workload], one could necessarily do so as well under NYCHRL's lower mixed-motive standard."  *Verne*, 2023 WL 6387274, at *17.  The Court therefore denies summary judgment as to Harris's NYCHRL age discrimination claim.[15]

### 3.  Hostile Work Environment

"The NYCHRL dispenses with the federal 'severe and pervasive' test; instead, a plaintiff bringing a hostile work environment claim under New York City law must 'prove[] by a preponderance of the evidence that she has been treated less well than other employees because of her [protected status].'"  *Id.* at *18 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (1st Dep't 2009)).  "Thus, the analysis of [Harris]'s hostile work environment claim under New York City law is [more] akin to that for her ADEA discrimination claim" than her ADEA and NYSHRL hostile work environment claims.  *Id.*  Contrary to the City's assertions, there is at least a disputed factual issue as to whether Roberson-Steele's comments were "isolated incidents," given the frequency with which Harris asserted they occurred in May and June 2019.  Motion at 22-23 (quoting *Tortorici*, 2021 WL 4177209, at *13); *see Tortorici*, 2021 WL 4177209, at *13 ("Isolated incidents of unwelcome verbal and physical conduct have been found to constitute the type of petty slights and trivial inconveniences that are not actionable, even under the more liberal NYCHRL [hostile work environment] standard.").  Nor can the Court credit the City's argument

---

[15] To be sure, the Court in its Opinion on the motion to dismiss the Third Amended Complaint allowed Harris's NYCHRL age discrimination claim to proceed based on all "conduct occurring up to June 20, 2019," but the Court need not address the outer contours of the claim given the conclusion stated above.  *Harris II*, 2022 WL 3100663, at *19.

that Harris "testif[ying] that she never had issues with completing work similarly belies her claims

of a hostile work environment under the [NYCHRL]."   Motion at 23.   The Second Circuit has

cautioned that "[u]nder the NYCHRL, . . . differential treatment may be actionable even if it does

not result in an employee's discharge.   Even a poorly-performing employee is entitled to an

environment free from [discrimination]."   *Mihalik*, 715 F.3d at 114.   In other words, a grant of

summary judgment is not warranted based on the ostensible fact that discrimination did not affect

an employee's work performance, since "[a]nalysis of the City HRL must be guided by the need

to make sure that discrimination plays *no* role [in the workplace]."   *Id.* (alterations in original)

(quoting *Williams*, 872 N.Y.S.2d at 38).   The Court therefore denies summary judgment on

Harris's NYCHRL hostile work environment claim.

## IV.  Conclusion

In light of the foregoing, the Court grants summary judgment in favor of the City on (1)

Harris's ADA, Rehabilitation Act, NYSHRL, and NYCHRL failure to accommodate claims

insofar as those claims are predicated on depression and (2) her ADEA and NYSHRL hostile work

environment claims.   Summary judgment is denied in all other respects.

The Clerk of Court is respectfully directed to (1) close the motions at Docket Numbers 88

and 103, (2) terminate the New York City Human Resources Administration and Steven Banks as

Defendants in this matter, (3) reinstate the City of New York as a Defendant in this matter, and (4)

to mail a copy of this Opinion and Order to Plaintiff Mary L. Harris.

The parties are directed to appear for a status conference on April 15, 2024 at 11:00 a.m.

to discuss next steps in this matter.  The conference will take place in Courtroom 12D of the Daniel

Patrick Moynihan U.S. Courthouse, 500 Pearl Street, New York, New York 10007.

     SO ORDERED.

Dated: March 29, 2024
      New York, New York

                                JOHN P. CRONAN
                         United States District Judge